## WHITE OAK TRANSPORTATION COMPANY *v.* BOSTON, CAPE COD & NEW YORK CANAL COMPANY.

## NORTHERN COAL COMPANY *v.* BOSTON, CAPE COD & NEW YORK CANAL COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

Nos. 116, 124. Argued March 1, 1922.—Decided April 10, 1922.

Where a large steamship, heavily laden and awkward to steer, traversing a canal, sheered to one bank and then the other, grounded, sprang a leak, and despite efforts first to hold and lighten and then to tow her through, sheered again to the other bank and sank, becoming a total loss with her cargo, *held*, upon the findings and evidence—

(1) That the master was not to blame for not displacing a canal pilot after the first accident and for permitting the vessel to proceed, before slack water, not fully pumped out and with her cargo unadjusted, in view of the canal company's regulations, the directions of its superintendent and the situation and consensus of opinion existing at the time. P. 344.

(2) That the loss was attributable to the joint negligence of the canal company and the master in attempting to pass such a vessel through the canal. P. 345.

(3) That all the damages, arising from the loss of the vessel and its cargo, injury to the canal and obstruction of the canal business, should be divided equally between the canal company and the vessel owner. P. 345.

(4) The cargo owner, having proceeded only against the canal company, was entitled to a decree for the full amount of its loss against that company. P. 345.

265 Fed. 538; 267 Fed. 176, reversed.

CERTIORARI to decrees of the Circuit Court of Appeals, the one holding the petitioner Transportation Company liable to the respondent Canal Company for damages found to have resulted from negligence of the petitioner in the management of its vessel in the respondent's canal;

the other exonerating the respondent Canal Company from liability to the petitioner Coal Company for the loss of a cargo contained in the same vessel.

*Mr. Edward E. Blodgett,* with whom *Mr. Foye M. Murphy* was on the brief, for petitioner in No. 116.

*Mr. Henry E. Warner,* with whom *Mr. John G. Palfrey* was on the brief, for petitioner in No. 124.

*Mr. Thomas H. Mahony,* with whom *Mr. Guy W. Currier* was on the brief, for respondent.

*Mr. Samuel Park,* with whom *Mr. Henry E. Mattison* was on the brief, for the T. A. Scott Company, Inc., impleaded with respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

On December 13, 1916, the steamer Bay Port, while passing through the Cape Cod Canal, ran ashore on the south bank and the next day sank diagonally across it. In January, 1917, the Canal Company filed a libel against the White Oak Transportation Company, the owner of the steamer, to recover for damages suffered by the canal and the obstruction of traffic through it. It also filed a libel against the T. A. Scott Company, Inc., a wrecking company, for negligence in dealing with the steamer after it had grounded; but this company has been exonerated and is not before us. In May, 1917, the Transportation Company filed a libel against the Canal Company, to charge it with a total loss of the steamer and freight, and in March, 1918, the Northern Coal Company intervened seeking to hold the Canal Company for a total loss of the cargo, which was coal. The causes were heard together below and were consolidated by agreement for hearing and determination upon one record here. The District Court found no negligence on either side and dismissed all the

libels. 251 Fed. 356. The Circuit Court of Appeals held the Transportation Company liable to the Canal Company, and reversed the decree in that cause. 265 Fed. 538. It also dismissed the intervening petition of the owner of the coal. 267 Fed. 176.

We agree with the Circuit Court of Appeals that the owners of the Bay Port and the Canal Company both ought to have known that it was unsafe to take the vessel through the canal. We agree with the dissenting Judge in the Circuit Court of Appeals that the loss of the cargo must be attributed to the joint negligence of the two; and we are of opinion that the amount of that loss, that suffered by the vessel and that suffered by the canal should be added together and divided between the Bay Port and the Canal.

The Bay Port was a lake built steamer of the whaleback type, 265 feet long and of 38 feet beam, which had been brought to the Atlantic. When deeply laden she steered somewhat awkwardly but as well as other vessels of the type. She was loaded with 2393 tons of coal and had a draft of eighteen feet two inches aft and seventeen feet eight inches forward, when soon after noon on December 13, 1916, she appeared at the western or Wing's Neck entrance to the canal. Her captain was a man of experience and had gone through the canal twice with the Bay Port when empty, never when loaded. He had been solicited by the Canal Company to go by way of the canal, the Company representing the canal to be twenty-five feet deep throughout as its charter required. Mass. Act of 1899, c. 448, § 3.

Having got permission the Bay Port started in tow of a tug with a competent pilot. The tide was about half out, running west at about three knots an hour. After proceeding halfway through the canal the vessel passed over a shoal where there was not more than twenty-one or

twenty-two feet of water, and soon after sheered toward the north bank and then toward the south bank where she grounded, at about a thousand feet from the shoal. It is strongly argued that this and the shoal next to be mentioned caused the trouble, but, notwithstanding *The Pennsylvania*, 19 Wall. 125, we will accept the finding of the two Courts that they were not the proximate cause. Two tugs and the superintendent of the canal came to the help of the Bay Port but could not get her off as the tide was falling. The tugs kept her upon the bank and the next morning a hole was discovered in her bottom, but was plugged. Arrangements had been made to lighten the cargo when unexpectedly, about 10.15 a. m., she slid into the channel. The pilot with whom she started had left but another canal pilot who seems to have taken his place ran upon the bridge and directed the captain to start his engines at full speed to prevent her drifting upon the opposite bank. She was down at the head from 18 to 30 inches with a list to port of from 15 to 24 inches. Since 6 a. m. the tide had been running to the east, the direction in which the steamer was going, and the pilot ordered a tug to take her in tow and started toward the east. The Bay Port proceeded about a mile; but after she had passed another shoal spot by some two thousand feet, sheered again two or three times and stranded on the north bank, the bow came clear and swung down stream and then she sank and became a total loss.

The Circuit Court of Appeals thought that the master was responsible for the loss because he did not displace the pilot and prevent the vessel proceeding before she was fully pumped out, the cargo adjusted and slack water had come, which he might have done by holding her in the channel by the tugs that were present or by tying up to some dolphins that he passed. Upon this point we agree with the reasoning of the District Court. The emergency was serious. The canal regulations provided

that in the event of grounding the canal authorities should have the right to direct all operations for floating the vessel. The superintendent of the Canal while present had told the pilot that he wanted to get the vessel out of the canal as soon as possible. The captain regarded that as the understanding of all concerned. The wreckers called out to the pilot: "She is yours." The pilot assumed command and started to carry out the superintendent's wish. Everybody at the time thought that the proper course, and we cannot think that the master was to blame for not overriding the judgment of the local experts, with which his own concurred, on general grounds. On the other hand, as we have said, we agree with the Circuit Court of Appeals, and in any event we find that the evidence recited by it shows that the Company had notice and that the master of the vessel ought to have known that it was unsafe and improper to try to carry this vessel, loaded as it was, through the canal. Both parties, therefore, are responsible for all the damages including the loss of cargo and they should be divided between the two. The cargo owner, however, having proceeded only against the Canal Company, is entitled to a decree against that company for the full amount. *The Atlas,* 93 U. S. 302. *The New York,* 175 U. S. 187, 209, 210.

*Decree of Circuit Court of Appeals reversed.*

*Decree to be entered that the Northern Coal Company recover its damages and costs from the Boston, Cape Cod & New York Canal Company; that the White Oak Transportation Company exonerate the Boston, Cape Cod & New York Canal Company from one-half of the above damages and costs, and that the damages and costs of the White Oak Transportation Company and the Boston, Cape Cod & New York Canal Company be equally divided between those two companies.*