## THE NIDARHOLM.

### NIDAROS v. OXFORD PAPER CO.

Circuit Court of Appeals, First Circuit. August 21, 1929.

No. 2335.

Robert E. Goodwin, of Boston, Mass. (Robert R. Duncan and Goodwin, Proctor & Hoar, all of Boston, Mass., on the brief), for appellant.

Nathan W. Thompson, of Portland, Me. (Woodman, Whitehouse, Skelton & Thompson, of Portland, Me., on the brief), for appellee.

Before BINGHAM, Circuit Judge, and MORTON and MORRIS, District Judges.

MORTON, District Judge. The question is whether the Nidarholm was liable for the loss of part of a deck load of pulp logs which went overboard when the stanchions holding them broke.

The facts are stated in the opinion of the District Judge, and need not be repeated. 26 F.(2d) 92. His conclusions that the steamer, because of excessive loading and too much deck cargo was top-heavy and unseaworthy when she began the voyage—faults for which her master was responsible—were clearly correct.

The only point which requires discussion is whether the charterer was also at fault. The cribbing which gave way was not part of the steamer's equipment. She was under no obligation to furnish it, and did not undertake to do so. The charterer, having hired the whole of the vessel, chose to increase her capacity for deck cargo by erecting on each deck (forward and aft) these cratelike containers rising 20 feet above the decks and about 15 feet above the bulwarks. The work was planned and done by the charterer's men under the supervision of its superintendent. The master of the Nidarholm said that he was unfamiliar with such structures, and left it to them. The steamer supplied ex gratia at the charterer's request some of the lashings, and her men made them fast. The master does not appear to have been consulted at all about the dimensions or material of the stanchions and stringers, or the way in which the crib was put together. He was consulted about the lashings and expressed the opinion that one reaching from side to side at the foremast was unnecessary. The cargo was loaded into the crib entirely by the charterer. The logs were laid fore and aft, a method which under the working of the vessel might impose severe wedging strains on the side supports. It was changed on the next voyage.

The accident started with the breaking either of a lashing or a stanchion on the port side of the forward deck. The testimony is that ultimately every stanchion broke, while only about half of the lashings, at most, gave way; the master and mate say less than one-third. For the lashings to hold and the stanchions to break indicates pretty conclusively that the stanchions themselves were of insufficient size or unsuitable material. Much larger ones were used on the next voyage. The failure of the cribbing in the quiet waters of a harbor under a list which was by no means as much as the steamer would be expected to roll on her voyage down the coast shows that there was something radically wrong with its construction, or with the way in which the logs were stowed, or with both.

As to dangers of a distinctly maritime character and unusual stresses set up by the movement of a vessel at sea which lie peculiarly within the knowledge and experience of mariners, the charterers were entitled to rely on the master's judgment. Lawrence v. Minturn, 17 How. 100, 112, 15 L. Ed. 58 (discussing liability of vessel for deck cargo); Blaikie v. Stembridge, 6 C. B. (N. S.) 894; Corsar v. Spreckels, 141 F. 260 (C. C. A. 9); The Oakley C. Curtis, 4 F.(2d) 979 (C. C. A. 2); The Thomas P. Beal, 11 F.(2d) 49 (C. C. A. 3). This accident was not due to causes of that character. McKnight knew as well as Captain Christophersen that the steamer would heel or roll, and that the cribbing must be strong enough to withstand the stresses which such motions would set up. We are not convinced that the steady pressure occasioned by the list was so much harder on the cribbing than rolling as to account for its breaking. The construction of the cribbing was, taking the facts most favorably to the charterer, a joint undertaking carried out by the charterer and the vessel; for the failure of it each was at fault, and the loss should be divided.

The decree of the District Court is vacated and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellant in this court.