MARINE FUEL TRANSFER CORP., as
owner of the M/V The MERRY QUEEN
and her cargo of fuel oil, Libelant,

v.

THE Tug RUTH, Robert B. Wathen,
Claimant.

JAMES HUGHES, Inc., as owner of THE
Barge GOSSAN, Libelant,

v.

THE M/V MERRY QUEEN, Marine Fuel
Transfer Corp., Claimant,
The Tug RUTH, Robert B. Wathen,
Claimant.

Nos. 19413, 19620.

United States District Court
E. D. New York.

June 22, 1955.

Mahar & Mason, New York City, for
Marine Fuel Transfer Corp.; Frank C.
Mason, New York City, of counsel.

Macklin, Speer, Hanan & McKernan,
New York City, for libelant, James
Hughes, Inc.; Leo F. Hanan and Charles
J. Carroll, Jr., New York City, of counsel.

Krisel, Beck & Meehan, New York
City, for claimant, Robert B. Wathen;
Max Taylor and Maurice A. Krisel, New
York City, advocates.

ABRUZZO, District Judge.

Marine Fuel Transfer Corporation is
the owner of the M/V Merry Queen, a
self-propelled oil tanker which collided
with the barge Gossan in the East River
in the vicinity of Hunts Point while in
tow of the tug Ruth at about 4 a. m. on
December 15, 1949. Robert B. Wathen
is the owner of the tug Ruth. James F.
Hughes, Inc., is the owner of the barge
Gossan. Both seek to recover the damages sustained as a result of the collision, the Merry Queen from the tug
Ruth, and the Gossan from the Merry
Queen and the tug Ruth. Both causes of
action were consolidated.

The Merry Queen claims that the tug
Ruth was entirely responsible for the
collision.

The barge Gossan claims that the damage to its barge was caused by the negli-

gence of the Merry Queen and the tug Ruth. It seeks a decree against both or either of them.

The establishment of the facts will point the way to a proper decree. These facts must be analyzed because the testimony is contradictory and the witnesses called by the respective parties have testified diametrically opposite to each other.

## Facts

The Merry Queen loaded with a cargo of fuel oil was bound easterly in the East River for Mt. Vernon, New York. The Ruth was towing the barges M. A. Donnelly and Gossan, tandem style, from Providence, Rhode Island, to New York.

Captain Jacobsen was the captain of the Merry Queen. At the time of the collision he was steering his vessel. There was a deck hand in the pilothouse on the port side. Jacobsen was proceeding in the middle of the channel with a flood tide underfoot. With a blue pencil he marked out his course and the point of the collision. Chart 226, Ruth Exhibit No. 2. It would appear and it is not in dispute that the channel was about 2,- 000 feet wide at that point. Jacobsen placed the letter "X" at the point where he claims the collision took place—that is mid-channel insofar as that exhibit is concerned. There was a tow quite some distance ahead of him, going in the same direction as the Merry Queen. (It turned out later that this was a tow with two tugs, the New Rochelle and Hartford.) As he was proceeding in the middle of the channel he suddenly was confronted with a black hulk, 300 or 400 feet from him but he could not tell the bow from the stern and collided with it, his starboard bow coming in contact with the port bow of this black hulk which later turned out to be the Gossan. As he was approaching he could not tell whether the hulk was moving until he was almost in contact with her. Tr. 78, 85. She was showing two white lights, one on top of the other, and he could not tell or distinguish these lights from the lights on the tow ahead because the lights

were in line with the lights of this tow and they all appeared to be on a barge in the same tow. These two white lights disappeared for a period of time and at the moment of collision he saw them again and they were on the Gossan. At the same time he also saw a dim red light on her. When he first saw these lights they appeared to be one above the other but at the time of collision they were side by side. Tr. 79. In other words, the two white lights he saw after sighting the Hartford-New Rochelle tow were the same two white lights he later saw on the Gossan at the moment of collision.

Krauss, the mate on the tug Ruth, testified that the Ruth was towing the Donnelly and Gossan astern with a 600-foot cable from the tug Ruth to the Donnelly and with a line roughly 600 feet from the Donnelly to the bow of the Gossan. While east of Execution Point he summoned Captain Simmons of the tug to the pilothouse because they were reaching the point where it was necessary to shorten their tow lines. At Whitestone the hawser between the Ruth and Donnelly was shortened and they proceeded to the anchorage just east of Hunts Point. After the Donnelly had been anchored in the anchorage zone they began to shorten up the tow line on the Gossan, intending to put it alongside the starboard quarter of the barge Donnelly and make it fast. The Ruth at the time they began the shortening up process showed tow lights, three lights in a vertical line. The Gossan had two lights astern. Krauss testified unequivocally that the collision took place while the Gossan was either all in the anchorage zone or a very small part of it out of the anchorage zone.

Simmons, the captain of the Ruth, corroborated Krauss, his mate. He testified that the collision took place at the time the Gossan was completely in the anchorage zone. He also testified that search lights were being focused on both the Donnelly and the Gossan while in the process of shortening the line from the Gossan.

McDonald testified that he was the captain of the Hartford and was assisting the tug New Rochelle which had in tow three barges going to Mt. Vernon. His tow was going in the same direction as the Merry Queen and was ahead of it. He passed the Gossan which was lying in mid-channel but he could not tell whether she was anchored or moving. He had to maneuver his tug to avoid striking the barge and just cleared her by six or seven feet. Tr. 103–104. After he passed the Gossan he heard the noise of the collision and went back to the assistance of the Merry Queen. He was not paying any attention to the lights on the Gossan because he was busy and paid no attention to lights. Tr. 104.

■ On the evidence the Court finds that the collision involved took place in mid-channel. It believes the testimony of the witness Jacobsen as to the point of the collision and this testimony is amply corroborated by the only disinterested witness in the case, to wit, Captain McDonald.

The testimony given by Krauss and Simmons left the Court in doubt as to their veracity and, therefore, it does not believe that search lights were being focused on both the Gossan and the Donnelly at the time the collision took place.

The captain of the Ruth was careless in two respects: (1) He attempted to shorten the tow line on the Gossan while she was in mid-channel and left too much of a tow line between the Ruth and the Gossan at that point; and (2) he was careless and negligent in not making the maneuver of shortening the hawser entirely in the anchorage zone. There was ample space in that zone to make this maneuver. Krauss so testified. Tr. 44–45.

■ The Merry Queen cites several statutory violations: (1) In obstructing the channel in violation of 33 U.S.C.A. § 409; (2) in neglecting to carry proper lights or signals in violation of 33 U.S.C.A. § 121 and Sections 80.16(b), (d) and (g) of the Pilot Rules, 33 C.F.R. 80.16(b), (d) and (g); (3) failure to comply with Sections 84.2 and 84.4 of the Pilot Rules (33 C.F.R. 84.2 and 84.4) in the matter of the length of her tow's hawsers, and in failing to shorten the length of her hawsers where the shortening should have taken place; and (4) (a) in that the Ruth negligently permitted the Gossan to be completely out of control in the fairway while engaged in bringing the head barge to anchor, (b) was a menace to other traffic, (c) that the tug failed to prevent the barge from interfering with the navigation of other vessels lawfully using the fairway, and (d) that the Ruth failed to sound any warning or other signal to passing traffic although she knew that the Gossan was a dangerous menace and likely to cause damage to other vessels.

The alleged statutory violations in view of the findings are not important. Had the maneuver been made by the Ruth entirely within the anchorage zone there would have been no collision.

At the time Jacobsen saw the two white lights that disappeared for some period of time he was proceeding at a speed of 9 or 10 knots an hour. He did not reduce his speed at any time, nor did he reverse his engines, and the only thing he did was swing his wheel hard to port in order to avoid colliding with the Gossan. From his testimony it appears that he had gained at least 4,000 feet on the Hartford flotilla because at the time of collision with the Gossan he was within 1,000 feet of this flotilla. He intended to pass the flotilla but gave no signal as to whether he would pass starboard or port side. Assuming that Captain Jacobsen was confused by the white lights ahead of him, he does not explain why he did not reduce his speed in view of the fact that he knew he was gaining on the tow ahead of him, nor does he explain why he did not give some signal of his intention to pass. For the two white lights on the Gossan to be one above the other, the Gossan would have had to be in the channel broadside.

Even though there had been a statutory violation in that the Gossan was left in mid-channel negligently by the cap-

tain of the Ruth, it still was encumbent upon Jacobsen to use care and caution. The moment these lights disappeared from his view it was his duty to reduce his speed. This negligence contributed to the happening of this collision.

 In view of the fact that the Court has found fault or blame on the part of both the captain of the Merry Queen and the captain of the Ruth, the Gossan is entitled to a decree against both the Merry Queen and the Ruth. The fault or blame should be apportioned 60 per cent on the part of the Ruth and 40 per cent on the part of the Merry Queen. The damages claimed by the Merry Queen are assessed against the Ruth in accordance with the formula of fault and blame of 60 per cent over 40 per cent.

Findings of fact, conclusions of law and a decree may be entered in accordance with this opinion.