428 F.2d 1131
 HORTON & HORTON, INC., Plaintiff-Appellant-Cross Appellee,
v.
T/S J. E. DYER, her Engines, Tackle, etc., and Commerce Tankers Company, Inc., her Owner, etc., et al., Defendants-Appellees-Cross Appellants.
 No. 28706.
 United States Court of Appeals, Fifth Circuit.
 July 13, 1970.
 
 Robert Eikel, Eikel & Goller, Houston, Tex., for appellant-cross-appellee, Horton & Horton, Inc.
 Thomas A. Brown, Brown & Sims, Houston Tex., for Vaughan Marine, Inc. and the Tug CAVALIER.
 William C. Bullard, Houston, Tex., for Dyer and Sinclair; Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel.
 Before BELL, COLEMAN and AINSWORTH, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 This admiralty matter evolved from a collision between vessels in the Houston (Texas) Ship Channel resulting shortly thereafter in a casualty which is the subject of the litigation. In the early morning of July 28, 1968, the tug CAVALIER, owned by Vaughan Marine, Inc., was proceeding up the Channel pushing ahead the loaded shell barges H&H 101 and H&H 139, owned by Horton & Horton, Inc., when the CAVALIER became involved in a collision with the tow of the tug C. R. CLEMENTS, owned by Republic Marine Carriers, Inc.[1] Following the collision the crew of the tug CAVALIER beached both of the H&H barges on the mud flats of the Channel. The H&H 101 had been leaking prior to the collision, necessitating pumping by the crew, but several hours before the accident the barge required pumping again but the pump furnished by Horton could not be started. After the collision a radio call was made by the captain of the CAVALIER to Horton's nearby office on the Channel requesting that Horton send an additional pump. The request went unheeded. Later the U. S. Coast Guard at the scene offered to pump out the H& H 101 but the CAVALIER, anticipating assistance from Horton, declined the offer. While the barges were lying on the strand, a tankship, the J. E. DYER, owned by Sinclair Refining Company, passed the site, apparently without incident. Shortly thereafter the H&H 101 capsized, spilling its load of shells into the water, and Joseph M. Fontenot, a deckhand from the tug CAVALIER, who had been sent aboard the sinking barge H&H 101 to retrieve the tug's running lights and electric cord, was thrown into the Channel and drowned.
 
 
 2
 Vaughan Marine, Inc., employer of the deceased deckhand, disposed of a claim for damages by Fontenot's widow and children for the sum of $45,000. Under the written settlement agreement the Fontenot heirs granted to Vaughan Marine, Inc. a full release from all liability growing out of the accident, specifically reserved their rights against all other parties, and assigned and subrogated those reserved rights to Vaughan Marine, Inc.
 
 
 3
 Horton & Horton, Inc. initiated these proceedings by filing suit against the T/S J. E. DYER and her owners, alleging that the damage to the H&H 101 and its cargo and the death of Fontenot were caused by its wave wash. Vaughan Marine, Inc. and Horton & Horton, Inc. subsequently filed complaints for exoneration or limitation of liability. Vaughan counterclaimed as owner of the CAVALIER and as assignee of the Fontenot heirs' claim. All of these causes were consolidated for trial.[2] The parties stipulated that the sum of $45,000 paid by Vaughan Marine, Inc. to the Fontenot heirs was fair and reasonable; and that the sum of $10,975 constituted the total damages suffered by Horton occasioned by the capsizing of the H&H 101 and the loss of its cargo.
 
 
 4
 The District Court in its findings and conclusions ascribed no fault to the tankship J. E. DYER and dismissed the complaint against it and its owners. We are in agreement with this finding, there being no convincing evidence of negligence against the J. E. DYER, and thus address ourselves to the relative claims existing between the two remaining parties, Vaughan and Horton.
 
 
 5
 The District Court found that the barge H&H 101 was unseaworthy because of various leaks, holes and breaches in her hull, some of long standing that the said unseaworthiness was within the privity and knowledge of Horton, that Horton breached its warranty of seaworthiness owed to Vaughan and the tug CAVALIER, and that this unseaworthiness was a proximate cause of the capsizing of the barge H&H 101 and the death of Fontenot. The District Court also found Horton negligent in failing to supply adequate pumps, in failing to respond to the master of the tug CAVALIER when he called for a pump after the collision, and that this negligence was a proximate cause of the capsizing of the H&H 101 and the death of Fontenot.
 
 
 6
 The District Court also found that the master and crew of the tug CAVALIER were negligent in failing to accept the use of pumps offered by the Coast Guard and in sending Fontenot aboard the H&H 101, which negligence was a proximate cause of the capsizing of the H&H 101 and the death of Fontenot.
 
 
 7
 Having decided that the death of Fontenot and the damages occasioned to the barge H&H 101 and its cargo were caused by the mutual fault of Horton and Vaughan, the Trial Judge divided Horton's damages of $10,975 and Vaughan's damages of $45,000 equally between the two parties. We affirm.
 
 
 8
 The parties do not seriously contest the factual determinations made by the Trial Court. Vaughan's brief concludes that the Trial Court should "in all things" be affirmed.[3] Horton, whose barge and cargo loss amounts to considerably less than the amount paid by Vaughan in settlement, contends that the Court erred in allowing contribution to Vaughan in connection with the $45,000 settlement made by Vaughan to Fontenot's survivors, citing Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L. Ed. 318 (1952), in support of its contention.
 
 
 9
 In Halcyon, a ship repair employee was injured aboard Halcyon's vessel while engaged in making repairs. He sued the shipowner for damages for his injury, alleging negligence and unseaworthiness. As a worker covered by the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §§ 901-950), he was prohibited from also suing his employer Haenn. The shipowner impleaded the employer as a joint tortfeasor, seeking contribution which the Supreme Court denied, holding that contribution had not been authorized by Congress under these circumstances.[4] By dictum the Court said that contribution had never been expressly applied in non-collision cases. The District Court, while expressing slight misgivings,[5] correctly distinguished the instant case from Halcyon as follows:
 
 
 10
 "Here we have a settlement by the CAVALIER interests with the injured party, and an assignment of the plaintiff's cause of action against the second wrongdoer. This was not true in the cited authority as there was no cause of action available to the injured shipyard worker against his own employer, the impleaded defendant against whom contribution was sought."
 
 
 11
 The District Judge, therefore, decided that the holding in Halcyon was limited to cases where the joint tort-feasor against whom contribution was sought was immune from tort liability by statute.
 
 
 12
 Regardless of whether we consider the restrictive language of Halcyon as dictum or determine that it should be confined to its own particular facts,[6] that is, as barring division of damages among joint tort-feasors, one of which is statutorily immune from tort liability, we agree with the District Court that the Halcyon doctrine is not applicable here. Vaughan stands in the place of the Fontenot heirs by virtue of the assignment, and is asserting a cause of action for damages due it resulting from the death of Fontenot. Unlike the injured harbor worker in Halcyon, who, by virtue of the limited tort liability provisions of the Harbor Workers' Act, was relegated to an action against one tort-feasor, the Fontenot heirs had the option, if they desired, of proceeding against both tort-feasors responsible for the death of the deckhand. Had the heirs exercised their right to sue Vaughan and Horton, both defendants would have been responsible in damages under circumstances not statutorily precluded as in Halcyon. See Luigi Serra, Inv. v. S.S. Francesco, 2 Cir., 1967, 379 F.2d 540; D/S Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341; Penn Tanker Company v. United States, 5 Cir., 1969, 409 F.2d 514.
 
 
 13
 The unfortunate casualty was one which should not have happened, considering the propitious circumstances which surrounded it — good weather, daylight hours, and no sudden emergency requiring instantaneous decisions. In short, it was an accident which would not have happened except for the concurring negligence of Vaughan and Horton. We find no error in the Court's holding that the negligence of both parties and the unseaworthiness of the H&H 101 were proximate causes of the capsizing of the barge and the death of Fontenot. In so holding, we have carefully considered the twofold argument of Horton in which it is urged first that conceding its negligence and the unseaworthiness of the barge, nevertheless neither circumstance can legally constitute a proximate cause of Fontenot's death.
 
 
 14
 Horton contends that the deterioration of the barge was merely a preexisting condition and not a proximate cause of the accident in the face of the direct intervention of the grossly negligent act of the CAVALIER'S Captain in ordering Fontenot to go aboard the vessel knowing that sinking was imminent. But for that grossly negligent order, Horton further contends, the death of Fontenot would not have occurred, and consequently the negligent act and not the pre-existing condition was the proximate cause of the accident; that in any event Vaughan had the last clear chance. With respect to the damage occasioned to the barge and its cargo, Horton argues the defective condition of the barge was known to the tug's captain and the tug cannot be absolved from its duty to take whatever steps were necessary and available to prevent further damage to the tow. This is not a case, however, where the unseaworthiness of a barge, which is obvious to the tug, is brought into active play only because of the superimposed subsequent negligence of the tug. See, e. g., Mississippi Valley Barge Line Co. v. T. L. James & Co., E. D. La. 1956, 144 F.Supp. 662, aff'd 5 Cir., 1957, 244 F.2d 263; Southwestern Sugar & Molasses Co. v. River Term. Corp., E. D. La., 1957, 153 F.Supp. 923; Chemical Transporter, Inc. v. M. Turecamo, Inc., Etc., 2 Cir., 1961, 290 F.2d 496. The record indicates much more than a pre-existing defective barge to which the tug should have accommodated herself. In addition to the unseaworthiness of the H&H 101 as a causative factor of the capsizing, the District Court found significantly that Horton's negligence in subsequently failing to provide pumps after being notified of the dire and immediate need for them was a proximate cause of the sinking and death. Thus the fault of Horton did not come to rest only to be revived by Vaughan's subsequent negligence. Horton's dereliction of duty was continuous from the time assistance was requested. Approximately four hours elapsed between the call for help and the subsequent sinking of the barge. We agree with the District Court that had a pump been furnished in timely fashion after this call, it is likely that the casualty would have been averted. Moreover, in determining causation in maritime matters, the applicability of such doctrines as last clear chance and the interruption of negligence by a subsequent intervening negligence is questionable. "[T]he maritime court has been less ready than the shore courts to find that a subsequent wrongful act by one party breaks the chain of causation connecting the accident with the prior negligence of the other party." Gilmore and Black, The Law of Admiralty, p. 404 (1957). See also Commercial Transport Corp. v. Martin Oil Service, Inc., 7 Cir., 1967, 374 F.2d 813, 817. The present case is unlike Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 5 Cir., 1969, 410 F.2d 178, which was remanded for determination of whether a cross-claimant's actions constituted passive, vicarious or secondary negligence, whereas here the District Court has determined the mutual fault of both parties as being direct proximate causes of the casualty. In his written opinion the District Judge has adequately set forth the facts which establish the basis of his findings after having had the opportunity to hear and observe the witnesses, appraise their credibility, and weigh any conflicting inferences. Unless such findings are clearly erroneous they will not be overturned. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774; Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir., 1969, 412 F.2d 1011. Questions of negligence, unseaworthiness and proximate cause are to be determined by the trier of fact and as such are subject to the clearly erroneous rule. Southern Stevedoring & Contracting Co. v. Hellenic Lines, Ltd., 5 Cir., 1968, 388 F.2d 267, 270; M/V Ena K. v. Monplaisir, 5 Cir., 1968, 391 F.2d 277, 278; E. D. Stephens v. Osaka Mercantile Steamship Company, 5 Cir., 1964, 328 F.2d 604, 605. We are unable to say that the Court's findings and conclusions are erroneous. To the contrary, we agree with them.
 
 
 15
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Prior to the trial, Republic Marine Carriers, Inc., owner of the tug which had in tow the colliding barge, settled all claims against it growing out of the collision and was dismissed from the suit
 
 
 [2]
 At the trial counsel withdrew the claim of Vaughan Marine, Inc. for limitation inasmuch as its total potential liability exposure was less than the value of the tug CAVALIER at the termination of the voyage
 
 
 [3]
 Vaughan argues that despite the fact that the Court had before it all of the parties who under any circumstances could have been at fault, Horton failed to make a claim against Vaughan for the damages occasioned to Fontenot's assignee, thereby precluding it from recovering in these proceedings. We find these objections to the adequacy of the pleadings to be without merit. The consolidated pleadings were sufficiently broad to enable the Court under its general equitable power to fashion a remedy which would do justice to the parties
 
 
 [4]
 Later the Supreme Court in Ryan Stevedore Co. v. Pan-Atlantic Steam Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), provided a remedy over by the shipowner against the employer, under a theory of indemnity
 
 
 [5]
 The District Judge said: "In making disposition of the foregoing matter, the only question which gives me any pause is that of the division of the damages. Despite the findings of mutual fault on the part of the Barge H & H 101 and of the Tug CAVALIER (which, in my judgment, is indicated by a clear preponderance of the evidence), nevertheless it is contended by Horton & Horton, as owner of the 101 * * * that * * * in no event should it share any portion of the CAVALIER's loss (due to the settlement for Fontenot's death)."
 
 
 [6]
 See, for example, the discussion in 45 Calif.L.Rev. 304, 345 (1957), Contribution and Division of Damages in Admiralty and Maritime Cases, in which the author after an extensive documented history and analysis of the equitable principles of contribution between mutual wrongdoers in admiralty concludes that the language inHalcyon is incorrect dictum, to be limited to the situation there presented.