**Beryl T. NICKERT, Executrix of the Estate of John Nickert, deceased, Plaintiff,**

v.

**PUGET SOUND TUG & BARGE COMPANY, a Washington corporation, et al., Defendants.**

**No. 7721.**

United States District Court,
W. D. Washington,
at Seattle.

Jan. 5, 1972.

Addendum Feb. 18, 1972.

See also D.C. 335 F.Supp. 1162.

---

------

Frank W. Draper, Detels, Draper & Marinkovich, Seattle, Wash., for Puget Sound Tug & Barge Co.

William A. Helsell, Helsell, Paul, Fetterman, Todd & Hokanson, Seattle, Wash., for General Motors Corp.

Jack P. Scholfield, Guttormsen, Scholfield & Stafford, Seattle, Wash., for San Diego Marine Constr. Co.

## OPINION

BEEKS, Chief Judge.

John Nickert, assistant engineer of the diesel tug MERCURY, died in an engine room fire while on watch, during the course of a voyage from Seattle to Alaska. The executrix of his estate brought a wrongful death action against three parties: Puget Sound Tug & Barge Company (Puget), which owned and operated the MERCURY at the time of the tragedy, San Diego Marine Construction Company (San Diego), which constructed said tug, and General Motors Corporation (GMC), which manufactured the engine.[1] After trial, final judgment was entered for plaintiff against all defendants on a jury verdict, but a mistrial was declared as to the various cross-claims of defendants.

GMC has moved for partial summary judgment against Puget on two issues: (1) that Puget be denied relief on its cross-claim for indemnity as to damages paid to Nickert's widow if Puget is found to have been negligent, and if such negligence was a cause of the fire; and (2) that damages to the tug MERCURY be apportioned between GMC and Puget according to the percentage of fault attributable to each.

The law as to the first issue has been conclusively settled, and defendant GMC's motion is therefore granted. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). It is true that *Halcyon* pertains to the question of contribution, while Puget phrases its cross-claim in terms of indemnity. The substance of Puget's claim, however, is indistinguishable from the position so clearly rejected in *Halcyon*. Therefore, if it is established at trial that negligence of Puget contributed to Nickert's death, such negligence will completely bar Puget's claim.

As for the second issue, the rule is not so clear. Neither party has cited a case from this Circuit or the Supreme Court clearly articulating the rule for apportioning damages in a mutual fault, non-collision, property damage case. In collision cases involving property damage where two or more ships are at fault, the undisputed rule is that of divided damages—the total of the damage suffered by both ships is divided equally.[2] This rule has

> for more than 100 years . . . governed . . . the correlative rights and duties of two shipowners whose vessels have been involved in a collision in which both were at fault. . . .[3]

1. At this stage of the proceedings, only GMC and Puget are actively participating. The third defendant in the suit, San Diego, is for all practical purposes not before the Court at this time. San Diego is involved only insofar as it may be liable for a defect in the engine, and has obtained a dismissal on all other aspects of the case; the dismissal is presently on appeal to the Ninth Circuit.

2. The Catharine v. Dickinson, et al., 58 U.S. (17 How.) 170, 15 L.Ed. 233 (1854).

3. Weyerhaeuser Steamship Co. v. U. S., 372 U.S. 597 at 603, 83 S.Ct. 926 at

In cases where plaintiff sues to recover for personal injury or death and the injured party was contributorily negligent, the universal rule is the application of the doctrine of comparative negligence —i.e., damages are apportioned according to the percentage of fault attributable to each of the parties.[4] The question is, which of these two methods should be applied here?

If this Court were to follow its own preference, it would rule that the doctrine of comparative negligence governs. That method of apportioning damages is well known to admiralty courts; it was also recently the subject of favorable comment by the United States Supreme Court in a non-admiralty setting.[5] Commentators have long expressed a preference for the doctrine of comparative negligence over the more easily applied but often inequitable rule of equal division of damages.

The only objection [to doing so] that really has any plausibility is the one based on the difficulty of assigning degrees of fault in exact percentages. The answer is, of course, that judges would simply approximate, as best they could, as is done every day in other cases in matters of amounts of damages, degree of disability, etc. An attempt at a division on the basis of degree of fault would at least not be foredoomed to go badly wrong in a large number of cases, as is the present rule.[6]

However, very few courts have applied the doctrine of comparative negligence to facts such as herein involved.[7] *Tracy Towing* was never appealed, is now almost twenty years old, and represents an isolated departure from the general rule. The only court to expressly follow the case was reversed on appeal.[8] In *Hartford*, the Fifth Circuit affirmed the trial court's award of a 50-50 split of the damages, but did not expressly rule that the doctrine of comparative negligence applied. *The MARY IDA* and *Marine Fuel* are anomolies, both apportioning damages in collision cases without citation to any authority. *The MARY IDA* was not appealed, and is clearly contrary to the general rule. Although *Marine Fuel* was affirmed on appeal, the question of damages was not considered. *The JAMES D. LEARY* did not identify which rule was being applied. Apparently it applied the rule of equal division of damages, but since ownership of the scows was not clearly identified, and since the court made findings as to percentages of fault, it is possible that the court used the doctrine of comparative negligence.

930, 10 L.Ed.2d 1 at 6 (1963). *Cf.* Union Oil Co. v. the SAN JACINTO, et al., 451 F.2d 1369 (9th Cir., 1971).

4. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

5. U. S. v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224, reh. den. 397 U.S. 1031, 90 S.Ct. 1255, 25 L.Ed.2d 546 (1970).

6. G. Gilmore and C. Black, The Law of Admiralty 438–442, at 440 (1957). *See also* J. Allbritton, Division of Damages in Admiralty—A Rising Tide of Confusion, 2 J. Maritime L. and Commerce 323, at 328–29 (1971), and G. Staring, Contribution and Division of Damages in Admiralty and Maritime Cases, 45 Cal.L.Rev. 304 (1957).

7. Tracy Towing Line, Inc. v. City of Jersey City, 105 F.Supp. 910 (D.N.J. 1952); Hartford Accident & Indemnity Co., et al. v. Gulf Refining Co., et al., 127 F.Supp. 469 (E.D.La.1954), aff'd. 230 F.2d 346 (5th Cir. 1956), cert. den. 352 U.S. 832, 77 S.Ct. 49, 1 L.Ed.2d 52 (1956); the MARY IDA, 20 F. 741 (S.D.Ala.1884); the JAMES D. LEARY, 108 F. 429 (E.D.N.Y.1901) [cited in N. M. Paterson & Sons, Ltd. v. City of Chicago, 209 F.Supp. 576 (N.D. Ill.1962), reversed by 324 F.2d 254 (7th Cir. 1963)]; Marine Fuel Transfer Corp., et al. v. the RUTH, 135 F.Supp. 371 (E.D.N.Y.1955), aff'd. 231 F.2d 319 (2d Cir. 1956).

8. N. M. Paterson & Sons, Ltd., et al. v. City of Chicago et al., 209 F.Supp. 576 (1962), reversed by 324 F.2d 254 (7th Cir. 1963). See note 10, *infra*.

The caselaw of other circuits indicates that the rule of equal division of damages is the proper method to use in this case. The Second Circuit has made itself absolutely clear on this point:

> The admiralty rule of evenly-divided damages in cases of injury to property—although a highly desirable departure from the "harsh" common-law doctrine which denies all relief to one suing for negligence if guilty of contributory negligence—has frequently received criticism as unfair. On that ground, virtually every country except ours has abandoned it. Nevertheless, we feel obliged to apply that rule until the Supreme Court or Congress instructs us otherwise.[9]

The Seventh Circuit, reversing a trial court which had apportioned damages to property under the doctrine of comparative negligence, also felt compelled to invoke the rule of equal division of damages.

> The claimed shortcomings of the rule are features inherent in it and have always coexisted with it. We are aware of no change in the nature or circumstances of the subject matter of its application which would justify its judicial rejection, or its restriction to mutual but equal fault cases, on the basis that it no longer serves to accomplish its original purpose. In our opinion the substitution of any alternative rule is a matter for congressional rather than judicial determination.[10]

This also appears to be the rule in the First,[11] Third,[12] Fourth,[13] and Fifth[14] Circuits. The author of a recent article, though favoring the doctrine of comparative negligence, grudgingly concluded:

> It would appear that in a non-collision property damage case there is ample authority to apply the divided damages rule in a contributory negligence situation. The authorities are fairly clear, however, that a comparative negligence doctrine will not be upheld.[15]

Reluctantly, this Court comes to the same conclusion. The overwhelming majority of mutual fault property damage cases involve collisions, and equal division of damages is the firmly entrenched rule. There is no valid justification for treating property damages any differently in non-collision cases. For this reason, and in the interest of uniformity, I adopt the rule of equally divided damages as controlling here. Congress might prefer to retain the rule of divided damages. On the other hand,

---

9. Ahlgren v. Red Star Towing & Transp. Co., Inc., 214 F.2d 618, 620–621 (2d Cir. 1954) (dictum). See also W. E. Hedger Transp. Corp. v. United Fruit Co., 198 F.2d 376 (2d Cir. 1952), and In re Penn. R. Co., 48 F.2d 559 at 565 (2d Cir. 1931).

10. N. M. Paterson & Sons, Ltd., et al. v. City of Chicago, et al., 324 F.2d 254 (7th Cir. 1963), involving a mutual fault collision between a vessel and a bridge.

    The district court opinion in *Paterson*, dated September 26, 1962, aroused keen interest in the admiralty bench and bar. Shortly thereafter, on April 1, 1963, the United States Supreme Court decided the *Weyerhaeuser* case, *supra* note 3; the Supreme Court thrice emphasized the acceptance of "the historic admiralty rule of divided damages" by American admiralty courts. The general interest aroused by *Paterson*, and the timing of *Weyerhaeuser*, may have indicated that the Supreme Court would not sanction the adoption of comparative negligence by judicial fiat in a non-collision property damage case. The Seventh Circuit reversed the trial court in *Paterson* on October 30, 1963.

11. Moran Towing Corp. v. M. A. Gammino Constr. Co., 409 F.2d 917 (1st Cir. 1969) (dictum); the NIDARHOLM, 34 F.2d 442 (1st Cir. 1929), aff'd. 282 U.S. 681, 51 S.Ct. 266, 75 L.Ed. 614 (1931).

12. Crain Bros., Inc. v. Wieman and Ward Co., 223 F.2d 256 (3d Cir. 1955).

13. The SOUTHPORT, 190 F.2d 699 (4th Cir. 1951).

14. Southport Transit Co. v. Avondale Marine Ways, Inc., 234 F.2d 947 (5th Cir. 1956).

15. J. Allbritton, *supra* note 6, at 345.

if its retention proves to be intolerable, "Congress has ample power under Articles I and III of the Constitution to enact a suitable solution."[16]

Accordingly, GMC's motion for partial summary judgment that damages to the MERCURY be apportioned according to percentage of fault must be denied.

Since the filing of the Opinion herein dated January 5, 1972 it has come to the attention of the court that the Supreme Court applied the doctrine of divided damages in White Oak Transportation Co. v. Boston, Cape Cod and New York Canal Co., (1922) 258 U.S. 341, 42 S.Ct. 338, 66 L.Ed. 649, a mutual fault noncollision property damage case.

See also D.C., 335 F.Supp. 1158.

**16.** *Cf.* Victory Carriers, Inc. v. Law, 404 U.S. 202, at 216, 92 S.Ct. 418, at 427, 30 L.Ed.2d 383 (1971).