**Joseph SAUS, Plaintiff,**

v.

**DELTA CONCRETE COMPANY, Defendant and Third-Party Plaintiff,**

v.

**BRAVO CORPORATION, Third-Party Defendant.**

Civ. A. No. 73–202.

United States District Court,
W. D. Pennsylvania.

Dec. 13, 1973.

As Amended Feb. 20, 1974.

Hymen Schlesinger, Pittsburgh, Pa., for plaintiff.

Herman C. Kimpel, John Edward Wall, Dickie, McCamey & Chilcote, Bruce R. Martin, Pittsburgh, Pa., for defendants.

OPINION

TEITELBAUM, District Judge.

On June 23, 1972, the plaintiff, Joseph Saus, fell and sustained injuries while attempting to secure two barges owned by third-party defendant Dravo Corporation. Delta Concrete Company, defendant and third-party plaintiff in this case, was the plaintiff's employer and the owner of the tug boat which was towing the barges at the time. The case is before the Court on Dravo's motions for judgment on its counterclaim, for judgment against the defendant and for judgment that the plaintiff may not recover from the third-party defendant. In making its motions, which shall be treated as a motion for judgment on the pleadings under F.R.Civ.P. 12(c), Dravo makes two basic contentions which are set out below.

I.

Dravo's first contention is procedural: that because plaintiff brought suit under the Jones Act and demanded a jury trial, this case cannot then be designated

as an admiralty claim under F.R.Civ.P. 9(h). Rule 9(h) provides as follows:

*"Admiralty or Maritime Claims*

A pleading or count setting forth a claim for relief within the admiralty or maritime jurisdiction . . . of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82. . . ."

The significance of Rule 9(h) is that it leads to Rule 14(c), which provides:

"When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third party defendant who may be wholly or partly liable, either to the plaintiff or to the third party plaintiff, by way of remedy over, contribution, or otherwise. . . ."

Dravo's procedural contention herein is essentially twofold: first, that since the plaintiff has failed to allege an admiralty or maritime claim under Rule 9(h), defendant Delta is then unable to bring Dravo into the case using Rule 14(c); and second, that the trial of a Rule 9(h) maritime claim and a Jones Act jury trial are mutually exclusive concepts because of Rule 38(e).[1] A careful consideration demonstrates that both of these contentions are without merit.

The first part of Dravo's argument is without merit because it is clear that an admiralty or maritime claim within the meaning of Rule 9(h) is alleged in plaintiff's complaint. As to the second part of his procedural argument, Dravo's contention must likewise fail. Both the Supreme Court and the Third Circuit have met with the issue presented and decided it against Dravo's contentions. In Fitzgerald v. U. S. Lines Co., 374 U.S. 16, 21, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963), it was stated: "Only one trier of fact should be used for the trial of what is essentially one law suit [the trial of a Jones Act claim along with an admiralty or maritime claim] to settle one claim split conceptually into separate parts because of historical developments". Haskins v. Point Towing Co., 395 F.2d 737, 740 (3d Cir. 1968) is also unequivocally in point against Dravo's argument. Dravo's procedural argument is without merit.

II.

Dravo's second major contention is that Delta Concrete can be entitled to neither contribution nor indemnity, should joint liability be established, on the basis of Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). Dravo argues that because this is so, it should be dismissed from the action.

In the *Halcyon* case, an employee of the Haenn company was injured while making repairs on a vessel owned by Halcyon. The employee sued Halcyon in the Eastern District of Pennsylvania for negligence and unseaworthiness. Halcyon sought contribution and brought in Haenn as third-party defendant. The district court allowed evidence of the degree of negligence of the parties and the jury returned a verdict that Haenn was 75% at fault and Halcyon 25%. Nevertheless, the district court held that damages should be apportioned equally between Halycon and Haenn. On appeal, the Third Circuit Court of Appeals sustained Halcyon's right to contribution,[2] but limited contribution to the amount of Haenn's liability under the Longshoremen's and Harbor Workers' Act.

The Supreme Court reversed. Justice Black, writing for the majority, reasoned that while contribution between joint tortfeasors in a case where two ships had collided was an "established doctrine", contribution between joint

1. Rule 38(e) provides as follows:

"*Admiralty and Maritime Claims.* These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)."

2. sub nom. Baccile v. Halcyon Lines, 187 F. 2d 403 (3d Cir. 1951).

tortfeasors had never been expressly[3] applied by the Court in a non-collision case. The majority opinion "concluded that it would be unwise to attempt to fashion new judicial rules of contribution", in view of the complexity of the issues and interests involved.[4] Inasmuch as Congress had "already enacted much legislation in the area of maritime personal injuries", it was held that the "solution of this problem should await congressional action". *Id.* at 284, 72 S. Ct. at 280.

The following year, 1953, the Supreme Court again refused to allow contribution under similar circumstances in Pope & Talbot Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), another case arising from the Third Circuit.

The history of the no contribution in non-collision admiralty cases rule continues with a quotation from Herbert Baer, Admiralty Law of the Supreme Court, § 8–1, pp. 195–6 (1969):

> "Despite the suggestion of the Court, Congress failed to take any action to relieve the inequitable results of the *Halcyon* and *Pope & Talbot* cases. . . . The old adage that 'there is more than one way to skin a cat' was soon to make itself felt. If tort law was not to be modified so as to give the shipowner relief by way of contribution, there still remained the possibility of utilizing implied indemnity principles of contract law. . . . That is exactly what was done three years later in 1956 by the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.

S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). (Black, J., dissenting)."

Thus began the development of the byzantine maze of exceptions and fine distinctions[5] which riddles this area of the law. The eminent Judge Friendly of the Second Circuit Court of Appeals has termed this area a "wonderland",[6] and indeed it is. Apparently, a number of courts have discovered that whatever the advantages and attractions of a policy of judicial restraint in terms of abstract institutional balance, when seen in terms of practical application in the *Halcyon* case, two fundamental obstacles to satisfaction arise.

First, *Halcyon* and its progeny, in denying contribution among joint tortfeasors in a non-collision case, find support in traditional maritime law.[7] But it requires no great familiarity with the ancient bases of admiralty jurisdiction to realize that the economic, technological and social conditions which prevailed at the time of the Hanseatic League or the Code of Wisbuy are far different than those which govern today. Once that premise is established, no quantum jump in reasoning is then required to come to the conclusion that principles of contribution applicable in modern day America should be different than they were in post-medieval Europe.

The second major obstacle to satisfaction with the *Halcyon* doctrine is the realization that its major premise has not been borne out by events occurring since 1952. The majority opinion in *Halcyon* is bottomed on the assumption that no court should attempt to fashion rules of

---

3. Justice Black, perhaps the Court's foremost advocate of judicial restraint, distinguished away as "incidental" the case of American Stevedores, Inc. v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1946) in which the Court recognized that lower federal courts had applied a rule of contribution in non-collision admiralty cases. 342 U.S. at 284, n. 5, 72 S.Ct. 277, 96 L.Ed. 318.

4. For instance, should contribution be based on the equal division of damages, or apportioned according to degree of fault, or limited

to the amount of liability under the Longshoremen's and Harbor Workers' Act.

5. See student work and articles at 45 Calif. L.Rev. 304 (1957), 4 Hou.L.Rev. 347 (1970), 20 Stan.L.Rev. 423 (1968) for an idea of the scope of the problem.

6. McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334, 1338 (2d Cir. 1969).

7. See Simpson Timber Co. v. Parks, 390 F. 2d 353, 356 (9th Cir. 1968) ; In Re Standard Oil of California, 325 F.Supp. 388, 390 (N.D.Cal.1971).

contribution for admiralty because the problems involved are so complex as to require legislative consideration of their many facets. Ideally speaking, this may have been a correct assessment of the inclinations and capabilities of the body politic in 1952. But twenty-one years have passed and Congress has yet failed to heed Justice Black's call to action. On the other hand, certain of the courts which have been faced with the problem in the intervening twenty-one years have not been so reticent.

In the Third Circuit at least, the *Halcyon* no contribution rule has been accepted without question as controlling. Read v. U.S., 201 F.2d 762 (3d Cir. 1953); King v. Waterman Steamship, 272 F.2d 823 (3d Cir. 1959); Mendez v. States Marine Lines Inc., 421 F.2d 851 (3d Cir. 1970).[8] The Third Circuit cases also show an unvaried adherence to the policy of *Ryan Stevedoring* in allowing indemnity in noncollision cases, even where contribution is disallowed. Hagans v. Farrell Lines Inc., 237 F.2d 477 (3d Cir. 1956); Johnson v. Sword Line Inc., 257 F.2d 541 (3d Cir. 1958); Dziedzina v. Dolphin Tanker Corp., 361 F.2d 120 (3d Cir. 1966). In point of fact, it appears that two Third Circuit cases anticipated and established the *Ryan* indemnity vis-a-vis contribution distinction even before the *Ryan Stevedoring* case was decided by the Supreme Court in 1956. Crawford v. Pope & Talbot Inc., 206 F.2d 784 (3d Cir. 1953); Brown v. American-Hawaiian S.S. Co., 211 F.2d 16 (3d Cir. 1954).

In other circuits, however, the *Halcyon* doctrine has not met with such unswerving acceptance. The ice was broken with Horton & Horton Inc. v. T/S J. E. Dyer, 428 F.2d 1131 (5th Cir. 1970), in which the Court of Appeals for the Fifth Circuit affirmed the holding of a district court that the *Halcyon* no contribution rule was limited to instances in which the joint tortfeasor was immune from tort liability by statute. The *Horton* holding was reaffirmed by the Fifth Circuit in Watz v. Zapata Off-Shore Co., 431 F.2d 100, 120 (5th Cir. 1970).

With the case of In Re Seaboard Shipping Corp., 449 F.2d 132 (2d Cir. 1971), the Court of Appeals for the Second Circuit followed suit. It held, in an opinion by Judge Friendly, that contribution would lie in the non-collision admiralty case before it and expressly adopted the Fifth Circuit's limiting construction of *Halcyon*. In so doing, Judge Friendly noted that the Supreme Court in the *Halcyon* opinion had apparently overlooked the case of White Oak Transportation Co. v. Boston, Cape Code & N.Y. Canal Co., 258 U.S. 341, 42 S.Ct. 338, 66 L.Ed. 649 (1922), in which the Court recognized that lower courts had allowed contribution in admiralty cases. *Id.* 449 F.2d at 138. It is also interesting to note that, as late as 1969, Judge Friendly had warned against further "adventures" in this area, absent such rulings as the Fifth Circuit's in Horton & Horton.[9]

Finally, it is important to point out that in Atlantic Coast Line R. Co. v. Erie Lackawanna R. Co., 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972), the Supreme Court affirmed, on the basis of *Halcyon*, a decision from the Second Circuit, argued and decided a few months before *Seaboard Shipping*, in which contribution had been disallowed. The meaning of this recent case must remain an enigma, for the short *per curiam* opinion does not refer to, let alone overrule, the *Horton, Watz* or *Seaboard* cases. As Judge Ingraham points out in Sessions v. Fritz Kopke Inc., 479 F.2d 1041 (5th Cir. 1973), the third decision in which the Fifth Circuit adheres to its limiting construction of *Halcyon, Horton, Watz* and *Seaboard* must be seen to retain their vitality.

8. Gooden v. Sinclair Refining Co., 378 F.2d 576, 583 (3d Cir.1967) is also interesting for the Court's effort to square its fashioning of admiralty reimbursement rules with *Halcyon's* against impingement upon the legislative prerogative in the maritime area.

9. McLaughlin v. Trelleborgs Angfartygs A/B, *supra.*

Therefore, in the case *sub judice,* the situation is as follows: were I free to do so, I would adopt the limiting construction placed upon *Halcyon* in *Horton* and allow contribution, assuming the facts should warrant it. Under the circumstances, however, I am ethically bound to follow the rulings of the Third Circuit Court of Appeals. This means, as pointed out above, that while under the facts as they appear now, contribution is not permissible in a case such as this, indemnity is. For that reason, third-party defendant Dravo's various motions, by means of which it seeks to extricate itself from this suit, will be denied, except that the motion for judgment that plaintiff may not recover from third-party defendant will be granted.

An appropriate Order in accordance with the foregoing Opinion will be entered.