Theodore **BENAZET**, Plaintiff,

v.

**ATLANTIC COAST LINE RAILROAD COMPANY**, Defendant and Third-Party Plaintiff,

v.

**ERIE LACKAWANNA RAILROAD COMPANY**, Third-Party Defendant.

No. 66 Civ. 1404.

United States District Court,
S. D. New York.

July 2, 1970.

Bromsen & Gammerman, New York City, for plaintiff; Joseph P. Altier, New York City, of counsel.

Carter, Ledyard & Milburn, New York City, for defendant and third-party plaintiff; James J. Mennis, New York City, of counsel.

Lloyd W. Roberson, New York City, Terence J. Connors, New York City, of counsel, for third-party defendant.

## OPINION

COOPER, District Judge.

Plaintiff Benazet brought suit against defendant Atlantic Coast Line Railroad Company (Atlantic) for damages suffered as a result of his fall from a railroad boxcar owned by Atlantic claiming Atlantic negligently released the car into commerce in a defective condition and failed to inspect, repair and warn of the defective condition. This action was removed to this Court from the Supreme Court, New York County, by Atlantic, federal jurisdiction resting upon diversity of citizenship. Thereafter, Atlantic impleaded plaintiff's employer Erie Lackawanna Railroad Company (Erie) asserting that Erie was in possession of the car at the time of the accident and was negligent in failing to properly inspect the car so as to discover any defective condition and, thus, liable either in contribution or indemnity for either one-half or the full amount, respectively, of any judgment plaintiff might recover against Atlantic.

Following a four day trial, the jury on April 16, 1970 returned a verdict in favor of plaintiff in the amount of $200,-000. Judgment was entered as to the main claim on April 30, 1970 pursuant to Rule 54(b), F.R.Civ.P.

We are here faced with certain legal contentions the resolution of which will determine the third party action. In connection with these questions of law including jurisdiction, motions have been

filed by all parties herein to amend the pleadings to conform with the proof. Finally, both defendant and third party defendant have moved on several grounds for an order setting aside the verdict or in the alternative granting a new trial.

\* \* \*

On July 30, 1964 Benazet was injured when, in the course of his duties as a brakeman employed by Erie, he attempted to tighten a handbrake on a railroad boxcar owned by Atlantic. Plaintiff claimed, and the jury evidently so found, that the accident and consequent injuries occurred generally as follows:. as he was applying the handbrake a rotted foot board gave way under his foot causing his weight to go upon the handbrake assembly which in turn broke away from the car as a result of the defective condition of the brackets affixing the handbrake assembly to the freight car resulting in plaintiff's fall. Proof at trial which the jury was entitled to credit, established that the brackets were defective in that they had fissures over an inch long, a condition requiring years to develop. Some time prior to the accident an attempt had been made to repair the breaks in each bracket by spot welding, a highly improper procedure at best and performed so poorly herein that one witness described it as a "butcher job."

This car owned by Atlantic left its possession on June 4, 1964, less than two months prior to the accident. Between that date and July 27, 1964 when it was delivered to Erie, it is acknowledged that it had been in the possession of and operated over approximately seven different railroads in different parts of the country. Erie had this car in its possession for three days prior to July 30, 1964, the date of plaintiff's injury. Nevertheless, based on the testimony with respect to the age of the defects, we believe there was adequate evidence to support the jury's requisite finding on the element of proximate causation that Atlantic was either the cause or knew or should have known of the existence of the defects in the brackets of the car it placed in commerce and that there was no superceding cause of the accident.

At the time of the accident the boxcar from which plaintiff fell was on a carfloat owned by Erie. The carfloat was a barge (having no motor power) with tracks to accommodate railroad cars. This carfloat was moored on the Hudson River near the New Jersey shore next to an Erie float bridge—a floating pier used for the loading or unloading of carfloats. The carfloat was fully loaded and ready for its scheduled towing across New York Harbor to connect with the Long Island Railroad. At the time of his fall to the deck of the carfloat, plaintiff was tightening the handbrake involved here in order to make the last boxcar more secure for that voyage.

## Excessiveness of the Verdict; Other Post Trial Motions

At the outset we dispose of defendant's and third party defendant's various motions to set aside the verdict and grant a new trial, which we denied after the jury's verdict but with leave to renew in writing.

As to the motions addressed to the claimed excessiveness of the jury's verdict: we can well understand how the jury came to regard plaintiff's testimony as forthright, clean and without exaggeration. That portion of the entire trial record which concerns itself with the pain and suffering endured, and clearly to be anticipated, demonstrates experiences of deep-seated unremitting and excruciating pain, both physical and mental, over an extensive period of time.

Wages lost before trial, loss of future wages and increments thereon (the reasonable expectancy of working years was 22 as agreed upon), the medical expense actually incurred and reasonably to be anticipated, were closely calculated and met with no disturbing opposition. See Grunenthal v. Long Island R. Co., 393 U. S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968).

We were very strict in holding the jury to those items of damage only which

the law countenances: [From the trial judge's draft of the charge to the jury (court reporter's minutes not presently available).]

"Now, what I have been laying down to you as to the law of damages is the law's formula for the assessment of damages. You have no power to alter that formula. Yes, you have the power under the law to determine the proper amount, if you should so find, of each item of damage, but you do not have the legal power to substitute another formula for the only one that the law recognizes. On all the items of damage you are to be guided by your common sense. As with everything else in this case, you are to be guided by what life has taught you, the experiences you have had, and such an award as you make must bear a reasonable relationship to the nature and extent of the injuries which you find, and all these items of damage then are to be totaled up into one lump sum."

■ With regard to the remaining motions: as indicated by our factual recital above, there was sufficient credible evidence of record to show liability on the part of defendant; the verdict was neither contrary to law; nor against the weight of the evidence.

### Maritime Jurisdiction

After two days of trial and on the eve of the Court's charge to the jury, Erie served and filed a memorandum of law contending for the first time that it had only then come to realize (and its hasty research confirm) that this case was properly one of maritime jurisdiction. Prior thereto, and in accordance with the pleadings, all parties proceeded under the assumption that New Jersey law governed both the main action and the claim over, as the requests to charge submitted by all parties at that time reflect.

Having insufficient time to resolve the difficult question of which law properly governed, we resolved, with the advance approval of all parties, to frame our charge and propound special interrogatories to the jury so as to prevent, hopefully, any possible need for a retrial regardless of the law eventually found applicable to the precise factual area defined herein. In substance, the jury specifically found Atlantic negligent and such negligence a proximate cause of plaintiff's injuries; plaintiff was not contributorily negligent; damages of $200,000; Erie also negligent and such negligence likewise a proximate cause of plaintiff's injuries.[1]

The jury's finding that plaintiff was not contributorily negligent, amply supported by the trial record, removed any problem as to whether any such negligence would be a complete bar or whether, instead, comparative negligence under maritime law was applicable. The remaining question is whether, despite the jury's finding of negligence by Erie as well as Atlantic, Erie is nevertheless entitled to dismissal of the third party action because: (1) either maritime law governs and contribution is not permitted in a non-collision suit such as this, or, (2) regardless of whether maritime law

1. The interrogatories propounded and the jury's responses in full are as follows:
   1. Was the Atlantic Coast Line Railroad negligent?
      A. Yes
   2. If yes, did such negligence contribute in any degree to the plaintiff's injuries?
      A. Yes
   3. Did plaintiff establish that he exercised due care for his own safety?
      A. Yes
   4. If yes on questions #1 and #2 what is the total amount of plaintiff's damages?
      A. $200,000
   5. If your answer on question #3 was no, has defendant established that the plaintiff was contributorily negligent? If yes, what percent?
      [not answered]
   6. If you find the Atlantic Coast Line Railroad is liable, was the Erie Lackawanna Railroad also negligent?
      A. Yes
   7. If so, was such negligence a substantial factor in bringing about plaintiff's injuries?
      A. Yes

governs, under the New Jersey Joint Tortfeasors Contribution Act, 2A N.J. S.A. Chap. 53A, contribution is not available from an employer such as Erie against whom plaintiff's exclusive remedy is a compensation act, in this case the Longshoremen's and Harbor Workers' Act.[2]

2. Atlantic informed the Court and Erie during the course of trial that it withdrew its cause of action for indemnity. Accordingly, the Court charged the jury only on Atlantic's third party claim for contribution and the interrogatories submitted to the jury did not inquire into the question of active-passive or primary-secondary negligence as between Atlantic and Erie. No objection was taken by Atlantic to either the Court's charge on the claim over or to the interrogatories propounded.

This withdrawal was so understood by Lloyd W. Roberson, Esq., counsel for Erie who stated on the first page of a memorandum dated April 27, 1970 in support of his motions to dismiss, set aside the verdict and for a new trial: "Before submission of the case to the jury the indemnity claim was withdrawn." Nevertheless, James J. Mennis, Esq., counsel for Atlantic, stated for the first time in the course of an affidavit (pages 4–5 thereof) dated May 8, 1970 in support of various post-trial motions to set aside the verdict and judgment thereon and grant a new trial:

"However, the only comment deponent recalls making in response to the court's reference to indemnity, was that defendant Atlantic Coast Line Railroad Company was relying principally on its right to contribution. Deponent has no recollection of withdrawing defendant Atlantic Coast Line Railroad Company's right of indemnity * * *."

In response Mr. Roberson avers:

"6. As the court will recall, at a time when all counsel were in the robing room with the presiding judge, presiding Judge Irving Ben Cooper indicated to the attorney for the plaintiff that the attorney for the plaintiff would probably want to amend his pleadings to conform to the proof. Honorable Irving Ben Cooper also asked Mr. Mennis, counsel for the defendant and third party plaintiff, whether he was continuing his indemnity claim. Mr. Mennis, stated he was withdrawing the claim based on indemnity.

7. The effect of such announcement was to set the pattern as to the areas in which jurors would be asked specific questions or give responses to specific interrogatories.

8. After the statement of withdrawal by Mr. Mennis, there was no further consideration given to charging the jury relative to the same or proposing any specific interrogatories concerning such indemnity.

\* \* \* \* \*

10. Furthermore, such withdrawal had a bearing on the approach that I took with the jury. A party in the position of the defendant is much less likely to obtain an affirmative finding of negligence on the part of the third party defendant where the jurors feel that an indemnity may be the remedy. The defendant and third party plaintiff is having its cake and eating it too if it were allowed to re-assert the indemnity claim in the present posture of the action." Affidavit of Lloyd W. Roberson, Esq., May 12, 1970.

Let's look at the record:

"The Court: Now Mr. Mennis—on the record—we did so much, I think we accomplished a lot off the record during the course of trial, but we can place on the record what we have agreed to.

Let the record show that you agreed to withdraw against Erie your claim for indemnity and to rely only on the claim of contribution.

Mr. Mennis: Yes, that's correct."

Minutes of Benazet v. Atlantic Coast Line v. Erie, April 16, 1970 (not transcribed as of the date of this opinion). We need not rest solely upon this unequivocal withdrawal, however, for, in any event, the nature of the claims of negligence asserted against Atlantic by plaintiff and, in turn, against Erie by Atlantic, combined with the evidence developed at trial and the jury's finding that both were negligent appears to preclude the possibility of indemnity being successfully maintained. Atlantic's negligence was not "passive" or "secondary" and Erie's negligence "sole," "active" or "primary." See generally Gilmore & Black, The Law of Admiralty at 367–74 (1957). We believe the active-passive standard would be controlling on a claim of indemnity in this situation where the employer third party defendant has no contractual relationship with the defend-

■ There is undisputed diversity of citizenship jurisdiction over this action. Jurisdiction under 28 U.S.C. § 1332 being present, we believe it unnecessary, even with maritime law governing, that the parties amend their pleadings to assert the possible additional jurisdictional basis in Admiralty, 28 U.S.C. § 1333.[3] Accordingly, the motions to amend are denied.

■ Plaintiff's fall from the boxcar occurred on board a carfloat, a vessel then moored to a floating pier in navigable waters, loaded and scheduled to be towed across New York Harbor. While the question is not wholly free from doubt, we conclude that federal maritime law is the substantive law governing this case, both as to the prime suit and the claim over. See Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1958). See also, Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 338–340, 73 S.Ct. 302, 97 L.Ed. 367 (1953) (a strikingly similar fact situation in which the Supreme Court held O'Rourke could not maintain an FELA action against his employer, his exclusive remedy held to be the Harbor Workers' Act); Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 134, 50 S.Ct. 303, 74 L.Ed. 754 (1930). Indeed, both Atlantic and Erie appear to so concede. See Memorandum of Law of Defendant and Third Party Plaintiff, May 11, 1970, p. 1; Memorandum of Law of Third Party Defendant, April 27, 1970.

### Contribution

■ Having found maritime law controlling, we are faced with the perplexing and often not wholly consistent body of law which frequents this area and from which we must obtain our guidance as to whether contribution is available. The leading case is Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952) in which the Supreme Court was faced with a conflict among the Circuits as to the existence and extent of contribution in non-collision maritime torts. A ship owner, sued for negligence and unseaworthiness by an injured employee of a shoreside contractor engaged by the ship owner to make repairs on a ship moored in navigable waters, impleaded the contractor seeking contribution on the ground the contractor's negligence had contributed to the injuries.

It was the conclusion of the Supreme Court that:

"it would be unwise to attempt to fashion new judicial rules of contribution and that the solution of this problem should await congressional action. Congress has already enacted much legislation in the area of maritime personal injuries. * * * The legislative process is peculiarly adapted to determine which of the many possible solutions to this problem would be most beneficial in the long run. * * Should a legislative inquiry convince Congress that a right to contribution

ant and third party plaintiff and where the defendant third party plaintiff cannot be held liable without fault. Compare Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 132–133, 76 S.Ct. 232, 100 L.Ed. 133 (1956). There is no warranty running from Erie to Atlantic which might justify finding a contractual basis for indemnity. Compare Italia Societa, etc. v. Oregon Stevedoring Co., 376 U.S. 315, 320–321, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).

3. Where the suit is, as here, *in personam*, it may be brought in federal court under the head of diversity of citizenship jurisdiction on the law side of the court (entitling one to a jury trial) on the basis that "Congress since 1789, in giving Federal District Courts original jurisdiction of civil cases in admiralty, has saved 'to suitors in all cases all other remedies to which they are otherwise entitled.'" Atlantic & Gulf Stevedores Inc. v. Ellerman Lines Ltd., 369 U.S. 355, 359–360, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962).

among joint tortfeasors is desirable, there would still be much doubt as to whether application of the rule or the amount of contribution should be limited by the Harbor Workers' Act, or should be based on an equal division of damages, or should be relatively apportioned in accordance with the degree of fault of the parties.

In view of the foregoing, and because Congress while acting in the field has stopped short of approving the rule of contribution here urged, we think it inappropriate for us to do so." Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. at 285–287, 72 S.Ct. at 280–281.

This decision still stands and Congress has not acted to extend the law of contribution to non-collision matters. There has, however, been considerable erosion of the effect of Halcyon. Thus, in subsequent decisions the Supreme Court held contractually-based indemnity actions were maintainable although actions for contribution between joint tortfeasors were not. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). See also, Gilmore & Black, The Law of Admiralty at 367–74 (1957).

Conceding that maritime law is applicable and that Halcyon, while often circumvented has not been overruled, Atlantic argues that there is a void in federal maritime law on the subject of contribution in non-collision cases and that, under settled principles, state law— here, the New Jersey Joint Tortfeasors Contribution Act—may be applied to fill that void as a supplement to the general maritime law. In the absence of a federal provision or common law right of action state wrongful death statutes have been invoked to recover for a maritime death. See The M/V "Tungus" v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1958); Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L. Ed.2d 305 (1960). There, too, Congress had enacted statutes providing for wrongful death actions in a limited number of situations, but had "stopped

short" of providing full coverage. However, this possible analogy to Halcyon and the Supreme Court decision to not extend the maritime rule of contribution was not developed by the Supreme Court in its decisions incorporating state wrongful death statutes into maritime law.

In Frueh v. Kupper v. Frueh, 54 N.J. Super. 296, 148 A.2d 743 (1959) the New Jersey Superior Court reasoned:

"The question of applicability of a state joint tortfeasors act was not discussed in the Halcyon case. The accident here occurred in waters within the geographical boundaries of New Jersey. The language of the Joint Tortfeasors Act has sufficient scope to include a maritime cause of action which arises in New Jersey. This act is broadly construed." 148 A.2d at 749.

The question is a close one. We believe, however, that the wrongful death cases are properly distinguishable and that Halcyon is determinative of the case at bar. The Supreme Court in The M/V "Tungus" before adopting the state right of action for wrongful death reiterated "the established principle of maritime law that in the absence of a statute there is no action for wrongful death." 358 U.S. at 590, 79 S.Ct. at 505. Thus, in adopting state wrongful death statutes, the Court never held that it had the power to create such an action at common law, but would refuse to do so because it was not convinced of its value and believed Congress by its selective action had expressed a contrary intent.

In contrast, in considering its power to fashion an extension of the existing maritime rule of contribution, the Supreme Court in Halcyon stated "we would feel free to do so here if wholly convinced that it would best serve the ends of justice." 342 U.S. at 285, 72 S.Ct. at 280. Thus, as we see it, the Halcyon ruling that "[i]n view of the foregoing, and because Congress while acting in the field has stopped short of approving the rule of contribution here

urged, we think it would be inappropriate for us to do so," cannot be seen as merely leaving a void in federal maritime law respecting contribution which a court is free to fill by the adoption of a state contribution statute. We believe the Supreme Court has stated that with much Congressional legislation already in existence in this area, the decision whether to extend a right of contribution here and, if so, in what manner, must be left to Congress in order to accommodate the "many groups of persons with varying interests * * * vitally concerned with the proper functioning and administration of these Acts as an integrated whole."[4]  342 U.S. at 286, 72 S.Ct. at 280.

## Conclusion

Accordingly, we hold that the third party claim for contribution must be dismissed as a matter of law.

---

4. Even if the New Jersey Joint Tortfeasors Contribution Act were adopted, the result would be far from clear. The Joint Tortfeasors Act is inapplicable to a third party suit against the employer of the injured plaintiff, at least where workmen's compensation exists and is the employee's exclusive remedy against his employer. See Farren v. New Jersey Turnpike Authority, 31 N.J.Super. 356, 106 A.2d 752 (App.Div.1954). The Supreme Court in adopting state wrongful death statutes holds that the right must be enforced as an integrated whole, with whatever conditions and limitations the creating state has attached. See The M/V "Tungus" v. Skovgaard, 358 U.S. at 591–594, 79 S.Ct. 503.

Here, the third party suit is against plaintiff's employer. While state workman's compensation is inapplicable, plaintiff is covered by the Longshoreman's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. In the virtually identical fact setting of Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1952) the Supreme Court held that railroad employee's remedy was under the Harbor Workers' Act exclusively, and not under the F.E.L.A.

Since *O'Rourke*, however, longshoremen, covered by the Harbor Workers' Act, have been permitted to sue their own employer, where that employer is also the shipowner, for unseaworthiness, despite the provision of the Harbor Workers' Act that the liability of an employer under the Act "shall be exclusive and in place of all other liability." See Jackson v. Lykes Bros. Steamship Co., 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed. 2d 488 (1967). Although plaintiff Benazet is not a longshoreman, the Supreme Court's reliance in *Jackson* on its expansive grant of the benefits of the seaworthiness doctrine to a wide range of maritime employees combined with its announced desire to avoid "a harsh and incongruous result" leads us to conclude that this plaintiff would probably be entitled to maintain a suit based on unseaworthiness of the carfloat owned by his employer Erie.

If we are correct, then the Harbor Workers' Act would not be plaintiff's exclusive remedy and the New Jersey Joint Tortfeasors Law might in this context permit an action for contribution against Erie. If so, then two questions would still remain: (1) is unseaworthiness necessarily present here in light of the factual setting of a defective boxcar on board Erie's carfloat and the jury's finding that Erie was negligent? (2) If yes, might Erie nonetheless be entitled to indemnity from Atlantic for any liability to plaintiff on the ground Atlantic was primarily responsible and, if so, would this not preclude joint contribution?

We find it unnecessary to travel this tortuous path to a possible conclusion for the reason already set forth—we believe *Halcyon* determinative of the question here presented.