**William HURDICH, Plaintiff,**

**Eastmount Shipping Corporation, Defendant and Third-Party Plaintiff,**

v.

**R. C. A. CORPORATION, Third-Party Defendant.**

No. 69 Civ. 3993.

. United States District Court,
S. D. New York.

June 22, 1973.

Abraham E. Freedman, New York City, for plaintiff.

Darby, Healey, Stonebridge & Whelan, New York, City, for defendant and third-party plaintiff; Thomas H. Healey, New York City, of counsel.

Hill, Betts & Nash, New York City, for third-party defendant; Robert S. Blanc, John F. X. McKiernan, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

William Hurdich was employed as a crew member of the Susquehanna owned by Eastmount Shipping Corp. On June 2, 1968, between 8:30 and 9:00 P.M., he slipped and injured himself on the flying bridge of the ship. At trial, the jury found the defendant liable and awarded Hurdich damages of $75,000.

Eastmount's third party claim against R.C.A. for indemnity was tried to the Court.

The facts are as follows: In May of 1968, Eastmount, through SAIT, Inc. hired R.C.A. to replace the main antenna insulator on the starboard side of the flying bridge. The work was performed by R.C.A.'s Chief Marine Service Representative from Mobile, Alabama, Jack Hays, on May 17th, and May 20th.[1] The work required chipping away the old insulators and replacing them with new ones. The chippings were apparently left on the flying bridge deck on May 17th, although Hays testified that they were cleaned up that day. However, we find his testimony to be inconsistent with the jury verdict which necessarily included the finding that Hurdich was

---

1. On May 20th, Hays' work was limited to bolting an insulator into place. However, no cleaning of refuse or debris was performed on that date.

caused to fall by the insulation debris which had not been cleaned up. (Caputo v. U. S. Lines Company, 311 F.2d 413 (2d Cir. 1963)).

Although Hays, in his earlier testimony, appeared to state that he had done both the changeover of antenna and the clean up job alone, he later testified that he was assisted in the clean up work by the ship's radio officer. Eastmount presented no evidence to contradict Hays' later testimony. We find that Hays was assisted in the attempted clean up by the ship's radio officer on May 17th.

Eastmount claims that R.C.A. breached its warranty of workmanlike service by failing to clean up the debris in a satisfactory manner. (Ryan Stevedoring Co. Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1955)). R.C.A. asserts a number of defenses. First: that there was a failure of proof that Hurdich was injured by any act of commission or omission by R.C.A. This argument must be rejected, since it is based on the contention that there was no proof that the material on which Hurdich slipped was insulation chipped in the removal of the old insulator on May 17, 1968. However, it was inherent in the finding of the jury that plaintiff did slip on such debris (chipped by R.C.A.). Indeed, the record contains no evidence suggesting any other possible cause of Hurdich's fall.

■ R.C.A. next contends that it did not breach its warranty of workmanlike service. We find on the facts of record that R.C.A. did breach its warranty in failing properly to remove the debris caused by the work which it contracted to perform. R.C.A. did not carry out the operations provided for in the contract in a reasonably safe manner as required by Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

■ R.C.A. next argues, relying on Weyerhaeuser S.S. Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), that even if it breached its warranty, Eastmount's conduct precludes indemnity as a matter of law. We disagree with R.C.A.'s contention that the condition here was "not merely known to the shipowner, it had been created by the shipowner." It is true that the condition was known to the shipowner by virtue of the fact that Eastmount's radio officer assisted Hays in the clean up. But the original condition was created by R.C.A. Hays was clearly in charge of the job. He supervised the replacement of the antenna and the clean up. But beyond that, it was in the course of the replacement of the antenna, the precise job for which R.C.A. contracted, that the accumulation of debris was created. Whatever contribution Eastmount's radio officer ultimately made to plaintiff's injury, a point which we discuss below, its conduct did not fall within the rule of Misurella v. Isthmian Lines, Inc., 328 F.2d 40, 41 (2d Cir. 1964) that, to preclude indemnity, conduct of the shipowner "must at the least prevent or seriously handicap the stevedore in his ability to do a workmanlike job". Nothing which any employee of Eastmount did in any way prevented or handicapped R.C.A. in its ability to do a workmanlike job of cleaning up the debris on the flying bridge deck. Since we find that the condition existing May 17th, was not created by the shipowner, we need not determine whether Eastmount's radio officer and assistant engineer were borrowed servants of R.C.A.

■ It is important to note, however, that Hurdich's accident occurred June 1, 1968, some two weeks after the original condition was caused by R.C.A. By virtue of the fact that Eastmount's employee had assisted in the attempted clean up on May 17th, it must be charged with knowledge of the condition as of that date and with responsibility (coordinate with R.C.A.) for failing to cure the condition during the period between May 17th and June 1st. We find, as discussed below, that Eastmount's negligence must be considered in determining

what recovery it is entitled to against R.C.A.

In the circumstances, we believe that the rule of In Re Seaboard Shipping Corporation, 449 F.2d 132 (2d Cir. 1971), cert. denied sub nom. Seaboard Shipping Corp. v. Moran Inland Waterways Corp., 406 U.S. 949, 92 S.Ct. 2038, 32 L.Ed.2d 337 (1972) applies.

In *Seaboard* plaintiffs asserted claims against a barge owner and a tug for the loss of lives of two bargemen. The Court found that the fault of both the barge owner and tug had caused the deaths and contributed "—to the end result, where the acts of one alone might not have been sufficient to cause any of the damage". We find here that R.C.A. was at fault for causing the original accumulation of debris and not cleaning it up in a workmanlike manner, and that Eastmount was at fault, not by creating the original condition, but by failing to cure a condition of which it had knowledge for a period of two weeks. If R.C.A. had not created the condition, or if R.C.A. or Eastmount, knowing of it, had cleaned up the debris, Hurdich's injury would not have occurred. The *Seaboard* court held that in such circumstances the rule of contribution produced the most equitable result. We find that that rule would produce the most equitable result here. We are mindful that some courts construe the decision in Halcyon Lines v. Haenn Ship Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1951) to preclude contribution among joint tort feasors in all non-collision cases, but the Court of Appeals made it clear in *Seaboard* that the rule of *Halcyon* does *not* apply where, as here, the injured employee was not "restricted by the limited tort liability provisions of the Harbor Workers' Act and thus precluded from suing his employer once he had gone against the shipowner". In the instant case, both Eastmount and R.C.A. were subject to direct suit by Hurdich and the rule of *Seaboard,* therefore, applies. This signal fact distinguishes the case from Benazet v. Atlantic Coast Line R. Co., 442 F.2d 694 (2d Cir. 1971) aff'd sub nom. Atlantic Coast Line v. Erie, Lackawanna Rd., 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972), on which Eastmount relies.

 We conclude that R.C.A. is liable to Eastmount for breach of its warranty of workmanlike service; but that because Hurdich was injured as the result of the negligence both of R.C.A. and Eastmount, under the rule of *Seaboard,* Eastmount is entitled to recover from R.C.A. fifty percent of the plaintiff's recovery against it, that is $37,500.

This Memorandum constitutes the court's findings of fact and conclusions of law.

Submit judgment on notice.