Ernest E. BURGESS et al., Plaintiffs,

v.

M/V TAMANO et al., Defendants and
Third-Party Plaintiffs,

v.

UNITED STATES of America et al.,
Third-Party Defendants.

STATE OF MAINE et al., Plaintiffs,

v.

M/V TAMANO et al., Defendants and
Third-Party Plaintiffs,

v.

UNITED STATES of America,
Third-Party Defendants.

Mark SNOW et al., Plaintiffs,

v.

M/V TAMANO et al., Defendants and
Third-Party Plaintiffs,

v.

UNITED STATES of America et al.,
Third-Party Defendants.

Calvin E. DOUGHTY, Jr., et al., Plaintiffs,

v.

M/V TAMANO et al., Defendants and
Third-Party Plaintiffs,

v.

UNITED STATES of America, Third-
Party Defendants.

Messrs. Wilhelm WILHELMSEN,
Plaintiff,

v.

UNITED STATES of America, Defendant
and Third-Party Plaintiff,

v.

Charles C. DUNBAR, Jr., et al.,
Third-Party Defendants.

Civ. Nos. 13–111, 13–156, 13–114,
13–115, 13–120 and 13–184.

United States District Court,
D. Maine, S. D.

March 22, 1974.

See also, D.C., 370 F.Supp. 247, D.
C., 357 F.Supp. 1097.

Theodore H. Kurtz, John A. Graustein and Richard A. Spencer, Portland, Me., for Ernest E. Burgess, John S. Norton and Alberto L. DiMillo and others.

Jon A. Lund, Atty. Gen., Martin L. Wilk, Asst. Atty. Gen., Augusta, Me., for State of Me.

Charles W. Smith, Saco, Me., James R. Flaker, Portland, Me., for Mark Snow, Fred Ahearn and others.

Michael B. Latti, Boston, Mass., Frederick T. McGonagle, Gorham, Me., for C. E. Doughty and A. L. Gibbons.

Benjamin Thompson, Thomas R. McNaboe, and James P. Lansing, Portland, Me., for M/V Tamano and Wilhelman.

Fred C. Scribner, Jr., and Ralph I. Lancaster, Jr., Portland, Me., for Texaco, Inc.

Allen vanEmmerick, and Emmet .B. Lewis, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Peter Mills, U. S. Atty., Portland, Me., for U. S. A.

Joseph C. Smith, New York City, John A. Mitchell, Portland, Me., for Charles Dunbar, Jr. and Portland Pilots Inc.

Morris D. Katz, Boston, Mass., Norman S. Reef, Portland, Me., for Madsen.

Warren E. Winslow, Portland, Me., for Warren and Barbara Paul.

David G. Armstrong, Cape Elizabeth, Me., for Jane S. Armstrong.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

These six consolidated actions arise out of the discharge into the waters of Casco Bay of approximately 100,000 gallons of Bunker C oil by the tanker M/V TAMANO when, while passing through Hussey Sound en route to the port of Portland early on the morning of July 22, 1972, she struck an outcropping of "Soldier Ledge." Civil Nos. 13–111, 13–115, 13–120 and 13–156 are class actions brought on behalf of owners of shore property, boat owners, commercial fishermen and commercial clam diggers alleged to have been damaged by the spill, and Civil No. 13–114 is an action brought by the State of Maine to recover damages claimed to have been sustained by the State as a result of the spill. Variously named as defendants in all these actions are the TAMANO, her owners and her captain (hereinafter jointly referred to as "Tamano"); the TAMANO's pilot and the Portland Pilots Association (hereinafter jointly referred to as "Portland Pilots"); the TAMANO's charterer, Texaco, Inc.; and the United States of America. In each action, Tamano has impleaded the United States as a third-party defendant.[1] In addition, Tamano has filed a direct action against the United States, Civil No. 13–184.

Presently before the Court is the motion of the United States pursuant to Fed.R.Civ.P. 12(b)(1) and (6) to dismiss all claims asserted against it by plaintiffs and Tamano,[2] except those asserting negligence in the buoyage of Hussey Sound or negligence in activities undertaken by the United States to con-

---

1. The United States was not named as a defendant in plaintiffs' original complaints, but was added by amendments subsequent to the filing of Tamano's third-party complaints. The parties have agreed that the third-party complaints should now properly be treated as cross-claims.

2. Although the United States' motion to dismiss appears also to seek dismissal of cross-claims filed by Portland Pilots in Civil Nos. 13–114 and 13–115 and of the third-party complaint filed by Portland Pilots in Civil No. 13–156, the sufficiency of these claims had been neither briefed nor argued and is therefore not before the Court at this time.

tain the flow of oil from the TAMANO or to clean up the spilled oil, for which negligence the United States concedes that it may be found liable under the principle of Indian Towing Co., Inc. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

I

### Summary of the Pleadings

*Plaintiffs' Claims.* All plaintiffs, invoking the admiralty and maritime jurisdiction of the federal courts,[3] assert liability of Tamano on theories of negligence, unseaworthiness, trespass and nuisance, and under Section 13 of the Rivers and Harbors Act of 1899, 33 U. S.C. § 407, and Section 11(b)(2) of the Water Quality Improvement Act of 1970, 33 U.S.C. § 1161(b)(2). The class action plaintiffs[4] allege liability of the United States because of negligent buoyage, negligent containment of the oil escaping from the TAMANO and negligent cleanup of the spill. Plaintiffs seek to recover as against all defendants the damages sustained by them from the spill.

*Tamano's Claims.* The grounds on which Tamano bases its claims against the United States are set forth in identical counts in its third-party complaints and in its direct action. These are:

*Count I.* This count alleges negligence by the United States Coast Guard in the positioning and maintenance of the Hussey Sound buoy marking Soldier Ledge. The third-party complaints seek contribution and/or indemnity for all amounts for which Tamano may be found liable to the original plaintiffs. The direct action seeks not only contribution and/or indemnity, but also recovery for hull damage, loss of use and cleanup costs.

*Count II.* This count alleges negligence by the Coast Guard in failing to comply with the national and regional contingency plans for the removal of oil promulgated pursuant to the Water Quality Improvement Act. The third-party complaints seek contribution and/or indemnity. The direct action seeks contribution and/or indemnity, and also recovery of cleanup costs.

*Count III.* This count alleges negligence of the United States in the drafting of the national and regional oil contingency plans. The same damages are sought as in Count II.

*Count IV.* This count alleges negligence in the conduct of containment and cleanup operations undertaken by the Coast Guard. The same damages are sought as in Count II.

*Count V.* This count alleges breach of a warranty of workmanlike performance in the conduct of containment and cleanup operations by the Coast Guard. It seeks the same damages as in Count II.

*Count VI.* This count alleges that the discharge was caused *solely* by the negligence of the United States and seeks recovery under Section 11(i)(1) of the Water Quality Improvement Act, 33 U.S.C. § 1161(i)(1). The direct action seeks recovery of Tamano's own cleanup costs, as well as contribution and/or indemnity for cleanup costs incurred by plaintiffs for which Tamano may be found liable to them. The third-party complaints seek only contribution and/or indemnity.

*Count VII.* This count, which appears only in the third-party complaints, seeks, pursuant to Fed.R.Civ. P. 14(c), to hold the United States directly liable to the original plaintiffs by reason of the derelictions alleged in the first six counts.

---

3. *See* 28 U.S.C. § 1333(1) and 46 U.S.C. § 740.

4. The United States is not named as a defendant in the action brought by the State of Maine, Civil No. 13–114.

## II

### *Jurisdiction*

The parties agree that this Court has exclusive jurisdiction of these claims, except for Tamano's claim for cleanup costs, under the Suits in Admiralty and Public Vessels Acts, 46 U.S.C. §§ 741–752 and 46 U.S.C. §§ 781–790, respectively. The United States raises, however, two *caveats*. First, it places the plaintiffs on notice that the Admiralty Extension Act, 46 U.S.C. § 740, appears to require the filing of an administrative claim for shore damage before suit may be brought. *See* Hahn v. United States, 218 F.Supp. 562 (E.D.Va. 1963). Second, the United States asserts that, if Tamano's cleanup expenses are ultimately shown to have been occasioned *solely* by negligence of the United States, the Water Quality Improvement Act provides that the Court of Claims has exclusive jurisdiction of any suit to recover such costs. Section 11(i)(1), (n), 33 U.S.C. § 1161(i)(1), (n). Plaintiffs and Tamano contest both assertions. Because this litigation involves many claims beyond shore damage and bare cleanup costs, the Court will defer resolution of these jurisdictional issues until the issue of fault has been determined by trial.

## III

### *The Motion to Dismiss Plaintiffs' Claims*

In their amended complaints, all the class action plaintiffs allege that the proximate cause of the grounding of the TAMANO was the negligence of the United States Coast Guard in positioning and maintaining the Soldier Ledge buoy, with the result that the buoy was off-station. They further allege that after the grounding the Coast Guard undertook the responsibility for containing the oil within the TAMANO and for cleaning up the oil which escaped from the TAMANO, and that the proximate cause of the escape and spread of oil from the TAMANO was the negligence of the Coast Guard in the conduct of its containment and cleanup operations. Plaintiffs seek recovery of their resulting damages on *Indian Towing* principles. In Civil No. 13–111, plaintiffs assert that the United States is also liable to them under Section 13 of the Rivers and Harbors Act and Section 11(b)(2) of the Water Quality Improvement Act.

### *Liability of the United States on Indian Towing Principles*

█ If the grounding of the TAMANO was caused by negligence of the Coast Guard in positioning and maintaining the Soldier Ledge buoy, or if the Coast Guard undertook responsibility for stemming the flow of oil from the TAMANO and for the cleanup operation, and the Coast Guard negligently discharged such assumed responsibilities, it is clear, as the United States concedes, that the United States may be found liable for any resulting damage on *Indian Towing* principles. Indian Towing Co. v. United States, *supra;* Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); United States v. Sandra & Dennis Fishing Corp., 372 F.2d 189 (1st Cir.), cert. denied, 389 U.S. 836, 88 S.Ct. 52, 19 L.Ed.2d 98 (1967); Afran Transport Co. v. United States, 309 F.Supp. 650 (S.D.N.Y.1969), aff'd, 435 F.2d 213 (2d Cir. 1970); Kommanvittselskapet Harwi (R. Wigand) v. United States, 305 F.Supp. 882 (E.D.Pa.1969), aff'd, 467 F.2d 456 (3rd Cir. 1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391 (1973). *See* De Bardeleben Marine Corp. v. United States, 451 F.2d 140 (5th Cir. 1971); Universe Tankships, Inc. v. United States, 336 F.Supp. 282 (E.D.Pa.1972). The United States contends, however, that its liability for any such negligence would be only to Tamano and not to the plaintiffs, because the plaintiffs do not constitute "maritime interests" entitled to rely on non-negligent buoyage and pollution abatement activities by the Coast Guard. The Court disagrees.

844

■ The parties agree that this Court has jurisdiction of these actions under the Suits in Admiralty and Public Vessels Acts. Section 2 of the Suits in Admiralty Act, 46 U.S.C. § 742, provides in pertinent part that:

> In cases where . . . if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam · may be brought against the United States . . . .⁵

In authorizing suits in admiralty against the United States in circumstances in which a private person could be sued, Congress made no attempt to limit the scope of the United States' liability in such a suit, and, indeed, those cases which have applied *Indian Towing* principles in an admiralty context make clear that the United States, in undertaking any "good Samaritan" task such as buoyage or pollution abatement, is liable in tort for the consequences of its negligence to the same extent as a private person would be liable under similar circumstances. United States v. Sandra & Dennis Fishing Corp., *supra;* De Bardeleben Marine Corp. v. United States, *supra;* Afran Transport Co. v. United States, *supra;* Kommanvittselskapet Harwi (R. Wigand) v. United States, *supra.* The tort liability of a private person for the foreseeable consequences of his negligence is equally well established:

> In [the inquiry into the scope of the duty] we look to see what natural forces and what human conduct should have appeared likely to come upon the scene, and we weigh the dangerous consequences likely to flow from the challenged conduct in the light of these interventions. And in this inquiry foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful man would take account of it in guiding practical conduct. Harper & James, The Law of Torts, pp. 1019–20. (footnotes omitted).

*See also* Palsgraff v. Long Island R.R. Co., 248 N.Y. 339, 162 N.E. 99 (1928); Restatement (Second) of Torts § 289 (1965). Plainly, any oil pollution damages sustained by the plaintiffs as a result of negligent buoyage or negligent containment and cleanup activities on the part of the Coast Guard constitute foreseeable consequences of such negligence, for which, on settled principles, the United States, like a private person, may be liable.

■ With respect to the claims of negligent buoyage, the United States further contends that 14 U.S.C. § 81, permitting the Coast Guard to establish "aids to maritime navigation," limits its liability to maritime interests. This statute, however, merely authorizes the Coast Guard to establish and maintain buoys and other navigation aids and does not purport to limit the scope of the United States' potential liability for Coast Guard negligence to something less than would attach to a similar undertaking by a private interest. Indian Towing Co. v. United States, *supra* 350 U.S. at 68–69, 76 S.Ct. 122. As did Chief Judge Aldrich in United States v. Sandra & Dennis Fishing Corp., *supra* 372 F.2d at 197 n. 16, this Court rejects the government's invitation to qualify the "Semper Paratus" motto with "Interdum Prudens."

*Liability of the United States under the Rivers and Harbors and Water Quality Improvement Acts.*

■■ There is no merit in the contention of the plaintiffs in Civil No. 13–111 that the United States may be liable for negligence of the Coast Guard under

---

5. Section 2 of the Public Vessels Act, 46 U.S.C. § 782, provides in relevant part that suits under that Act "shall be subject to and proceed in accordance with the provisions of [the Suits in Admiralty Act] or any amendment thereof . . . not inconsistent herewith . . . ."

Section 13 of the Rivers and Harbors Act and Section 11(b)(2) of the Water Quality Improvement Act. With the single exception of Section 11(i)(1) of the latter Act,[6] these plaintiffs can point to no language in either statute which, either expressly or impliedly, provides for any liability of the United States to private persons, nor can they cite any authority for their assertion. To the contrary, it is well settled "that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability." Kirk v. United States, 270 F.2d 110, 117 (9th Cir. 1959). See also Berry v. Housing and Home Finance Agency, 340 F.2d 939, 940 (2d Cir. 1965). Indeed, it has been consistently held that Section 13 of the Rivers and Harbors Act creates no private right of action. Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81 (2d Cir. 1972) and cases therein cited at 82 n. 1. It is clear that both the Rivers and Harbors Act and the Water Quality Improvement Act were enacted by the Congress as remedial legislation designed to protect the public from the disastrous consequences of maritime pollution, including oil spills. Neither statute, either expressly or constructively, creates a cause of action in anyone against the United States on the basis here asserted.

The motion to dismiss so much of plaintiffs' claims against the United States as asserts liability for negligent buoyage, negligent containment and negligent cleanup is denied. The motion to dismiss so much of plaintiffs' claims against the United States as asserts liability under the Rivers and Harbors Act and the Water Quality Improvement Act is granted.

6. *See* discussion of Section 11(i)(1) in Part II, *supra*, and in Part IV (Count VI), *infra*.

7. As previously stated, Tamano's claims against the United States are set forth in identical counts in the third-party complaints

## IV

### *The Motion to Dismiss Tamano's Claims*

The motion to dismiss raises questions with respect to each and every one of the claims asserted against the United States by Tamano. The various grounds upon which the United States seeks dismissal of Tamano's claims will be separately considered with respect to each count.[7]

### Count I

Count I alleges that the grounding of the TAMANO was due to the negligence of the United States Coast Guard in permitting the Soldier Ledge buoy to be off-station. The third-party complaints seek contribution and/or indemnity for all amounts for which Tamano may be found liable to the original plaintiffs. The direct action seeks not only contribution and/or indemnity, but also recovery for hull damage, loss of use and cleanup costs.

Insofar as Count I seeks recovery for hull damage, loss of use and cleanup costs incurred by Tamano as the result of negligent buoyage, the United States concedes that it states a viable cause of action on *Indian Towing* principles. The United States contends, however, that Tamano's claims for contribution and/or indemnity must fail. The Court holds that the contribution claim states a viable cause of action, but that the indemnity claim does not.

### *Contribution*

■ Relying on Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952) and Atlantic Coast Line Railroad Co. v. Erie Lackawanna Railroad Co., 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972), the United States argues that contribution between joint tort-

and in Tamano's direct action, except that the third-party complaints contain a seventh count which seeks to hold the United States directly liable to the original plaintiffs by reason of the matters alleged in the first six counts.

feasors is not permitted in non-collision admiralty cases. In *Halcyon*, the Supreme Court held that there was no right of contribution between a shipowner and a shore-side contractor who were joint tortfeasors in a case involving injuries to an employee of the contractor while engaged in repair work on the ship. The Court said:

> Where two vessels collide due to the fault of both, it is established admiralty doctrine that the mutual wrongdoers shall share equally the damages sustained by each, as well as personal injury and property damage inflicted on innocent third parties. This maritime rule is of ancient origin and has been applied in many cases, *but this Court has never expressly applied it to non-collision cases*. 342 U.S. at 284, 72 S.Ct. at 279 (footnotes omitted) (emphasis supplied).

In *Atlantic Coast Line*, the Supreme Court, on the authority of *Halcyon*, in a short per curiam opinion, held that there was no right of contribution in a case involving injuries to an employee of one railroad who was injured while working on equipment of another railroad.[8] In affirming the judgment of the District Court, the Court stated:

> We agree that in this noncollision admiralty case the District Court properly dismissed petitioner's third-party complaint for contribution against respondent Erie on the authority of Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S. Ct. 277, 96 L.Ed. 318 (1952).

Both *Halcyon* and *Atlantic Coast Line*, however, were cases in which a statute, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., prohibited the employee plaintiff from suing his impleaded employer. Despite the broad language employed in *Halcyon*, in a subsequent case the Court has indicated that its holding in *Halcyon* was limited to cases in which the joint tortfeasor against whom contribution is sought is immune from tort liability to the plaintiff. In Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), Mr. Justice White, writing for the Court, stated that *Halcyon* "held that maritime principles of contribution between joint tortfeasors prevailing in collision cases were not applicable in suits for contribution by a shipowner against stevedore companies." *Id.* at 320, 84 S.Ct. at 752. In his dissenting opinion in the same case, Mr. Justice Black, author of the Court's opinion in *Halcyon*, said that in *Halcyon*,

> . . . [W]e held that the system of compensation which Congress established in the Longshoremen's and Harborworkers' Compensation Act as the sole liability of a stevedoring company to its employees prevented a shipowner from shifting all or part of his liability to the injured longshoreman onto the stevedoring company, the longshoreman's employer. *Id.* at 325, 84 S.Ct. at 754.

*See also* Pope and Talbot, Inc. v. Hawn, 346 U.S. 406, 408, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

Limiting *Halcyon* to its holding, both the Second and Fifth Circuits have held that contribution lies in non-collision admiralty cases in which the plaintiff could have proceeded against and recovered damages from the alleged joint tortfeasor. Sessions v. Fritz Kopke, Inc., 479 F.2d 1041, 1042 (5th Cir. 1973), cert. granted sub nom. Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc., 414 U.S. 1127, 94 S.Ct. 864, 38 L. Ed.2d 752 (1974); In re Seaboard Shipping Corp., 449 F.2d 132, 138–139 (2d Cir. 1971), cert. denied, 406 U.S. 949, 92 S.Ct. 2038, 2039, 32 L.Ed.2d 337 (1972); Watz v. Zapata Off-Shore Co., 431 F.2d 100, 120 (5th Cir. 1970); Horton and Horton, Inc. v. Dyer, 428 F.2d 1131,

---

**8.** While the Supreme Court's per curiam opinion in *Atlantic Coast Line* does not state the factual context, it may be gleaned from the opinion of the District Court. *See* Benazet v. Atlantic Coast Line Railroad Co., 315 F.Supp. 357 (S.D.N.Y.1970).

1133–1134 (5th Cir. 1970), cert. denied, 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971). *See also* Hurdich v. R. C. A. Corp., 359 F.Supp. 1222, 1225 (S.D. N.Y.1973); Russell, Poling & Co. v. United States, 140 F.Supp. 890, 892–893 (S.D.N.Y.1956). In agreement with the Second and Fifth Circuits, this Court is persuaded that the *Halcyon* doctrine is inapplicable when the joint tortfeasor against whom contribution is sought may be liable in tort to the original plaintiff. Here, unlike *Halcyon* and *Atlantic Coast Lines,* the United States is not immune from tort liability to the plaintiffs. It follows that, if Tamano is able to establish the joint negligence of the United States, Tamano will be entitled to contribution in these cases.

Moreover, the Court is satisfied that Tamano's contribution claims are supported by a line of authority independent of *Halcyon.* In White Oak Transportation Co. v. Boston, Cape Cod & New York Canal Company, 258 U.S. 341, 42 S.Ct. 338, 66 L.Ed. 649 (1922), the Supreme Court ordered divided damages between the plaintiff canal company and the defendant barge owner when one of the defendant's barges was stranded in the Cape Cod Canal because of the negligence of both parties. In *Halcyon,* the Supreme Court did not overrule *White Oak;* indeed, the Court made no reference to that case. *White Oak* was a stranding case similar to the present case. It has never been overruled and would appear to be direct authority supporting a right of contribution here. In re Seaboard Shipping Corp., *supra,* 449 F.2d at 138–139; Russell, Poling & Co. v. United States, *supra,* 140 F.Supp. at 893. *See also* Richmond Marine Panama v. United States, 350 F.Supp. 1210 (S. D.N.Y.1972); Afran Transport Co. v. United States, *supra,* 309 F.Supp. at 659, n.45.[8a]

*Indemnity*

Tamano claims indemnity from the United States, on both contract and tort principles, for all amounts for which Tamano may be found liable to plaintiffs.

In the absence of a contractual relationship between the parties, there is no basis for a claim of contract indemnity. In the present case, Tamano does not allege, nor could it allege, the existence of any contract between the United States and Tamano which might form the basis for contractual indemnity. *Compare* Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., *supra.* Absent such a contract, contractual indemnity cannot lie.

Tamano predicates its claim for tort indemnity on the "passive-active" principle articulated in Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178 (5th Cir. 1969). *See also* Magnum Marine v. Kenosha Auto Transport Corp., 481 F.2d 933 (5th Cir. 1973); Kelloch v. S & H Subwater Salvage, Inc., 473 F.2d 767 (5th Cir. 1973); Porter v. Eckert, 465 F.2d 1307 (5th Cir. 1972). The passive-active distinction, however, has no application here. That distinction, when made, permits indemnity, in a case in which the mutual fault of two parties has been established, when the fault of one party is only "technical or passive," while the fault of the other is "active or affirmative." Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., *supra,* 410 F.2d at 181. Tort indemnity depends on there being "no negligence or only passive negligence attributed to the indemnitee." *Id.* 410 F.2d at 186. "The right is equitable and is dependent upon the legal principle that everyone is re-

---

**8a.** As noted above, the Supreme Court has granted certiorari in the *Sessions* case. The question certified is whether there is a right of contribution in a non-collision maritime case. *See* 414 U.S. 1127, 94 S.Ct. 864, 38 L. Ed.2d 752. This Court's determination that such a right of contribution may exist in this non-collision maritime case is, of course, subject to reconsideration in light of the Supreme Court's ultimate ruling.

sponsible for the consequences of his own wrong; that if others are compelled to pay damages that ought to have been paid by the wrongdoer, they may recover from him." *Id.* 410 F.2d at 181. The most frequent application of the principle has been where the active negligence of a stevedore has rendered a vessel unseaworthy, thereby occasioning the shipowner's vicarious liability without fault. *E. g.,* McLaughlin v. Trelleborgs Angfartygs A/B, 408 F.2d 1334 (2d Cir.), cert. denied sub nom. Golten Marine Co. v. Trelleborgs, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464 (1969); Simpson Timber Co. v. Parks, 390 F.2d 353 (9th Cir.), cert. denied, 393 U.S. 858, 89 S.Ct. 126, 21 L.Ed.2d 127 (1968); Lawlor v. Socony-Vacuum Oil Co., 275 F.2d 599 (2d Cir.), cert. denied, 363 U.S. 844, 80 S.Ct. 1614, 4 L.Ed.2d 1728 (1960); Jones v. Waterman S.S. Corp., 155 F.2d 992 (3rd Cir. 1946). The present case is not a case in which the active negligence of the United States could result in the vicarious liability of Tamano, for there is no basis upon which Tamano can be found liable to these plaintiffs unless it is established that active negligence on its part was a direct cause of their damages. Dugas v. Pelican Construction Co., Inc., 481 F.2d 773, 780 n. 9 (5th Cir. 1973); State of Maryland, Department of Natural Resources v. Amerada Hess Corp., 350 F.Supp. 1060, 1070–1071 (D.Md.1972). In such circumstances, Tamano cannot be entitled to indemnity from the United States on tort principles. Wellington Transportation Co. v. United States, 481 F.2d 108 (6th Cir. 1973).

The motion to dismiss so much of Count I of Tamano's direct and third-party complaints against the United States as seeks hull damage, loss of use, cleanup costs and contribution is denied. The motion to dismiss so much of Count I of Tamano's direct and third-party complaints against the United States as seeks indemnity is granted.

9. At oral argument, counsel for Tamano indicated that the alleged dereliction in this respect was the failure of the government to

*Counts II and III*

■ The claims asserted against the United States in Counts II and III are bottomed upon the national and regional oil contingency plans promulgated pursuant to Section 11(c)(2) of the Water Quality Improvement Act, 33 U.S.C. § 1161(c)(2). Count II alleges, without specification, negligence in failing to comply with the contingency plans. Count III alleges, again with specification, negligence in the drafting of the plans. Under both of these counts in the third-party actions, Tamano seeks contribution and/or indemnity, and in the direct action, Tamano also seeks recovery of cleanup costs.

The theory upon which Tamano asserts liability of the United States by reason of the contingency plans is far from clear. Tamano does not seem to suggest that either the Act or the plans imposed any duty on the United States to clean up oil spills, and, indeed, the Act makes clear that ultimate responsibility for the cleanup of an oil spill is imposed upon the owner and operator of the vessel responsible for the spill. 33 U.S.C. § 1161(f). Tamano's position appears to be that, by adopting the oil contingency plans, the United States made certain representations as to the availability of cleanup facilities upon which Tamano reasonably relied,[9] and that hence the United States may be liable for any damages incurred by third parties resulting from any inadequacy of the plans or from any failure to comply therewith, on the *Indian Towing* principle that "government must not mislead, and must not induce reliance upon a belief that it is providing something which, in fact, it is not providing." United States v. Sandra & Dennis Fishing Corp., *supra,* 372 F.2d at 195. But Tamano does not identify, and cannot identify, any representation in the plans upon which it might reasonably have relied. Absent such a representation, *Indian Towing* principles are inapplicable.

have equipment and personnel available in the Portland vicinity.

The motion to dismiss Counts II and III of Tamano's direct and third-party complaints against the United States is granted.

### Count IV

Count IV alleges that the United States Coast Guard undertook the responsibility for containing the oil within the TAMANO and for cleaning up the oil which escaped therefrom. The count asserts liability of the United States because of the alleged negligence of the Coast Guard in the conduct of the containment and cleanup operations undertaken by it. The third-party complaints seek contribution and/or indemnity. The direct action seeks contribution and/or indemnity, and also recovery of additional cleanup costs caused to Tamano.

The United States concedes that it may be found liable on *Indian Towing* principles for any additional cleanup costs incurred by Tamano as the result of any negligence of the Coast Guard in the conduct of containment and cleanup operations for which it assumed responsibility. The United States contends, however, that Tamano can have no claim for contribution or indemnity. For the reasons stated in its discussion of the claims for contribution and indemnity asserted in Count I, the Court holds that the claim for contribution may stand, but the claim for indemnity may not.

The motion to dismiss so much of Count IV of Tamano's direct and third-party complaints against the United States as seeks cleanup costs and contribution is denied. The motion to dismiss so much of Count IV of Tamano's direct and third-party complaints against the United States as seeks indemnity is granted.

### Count V

Count V asserts, as a basis for liability of the United States, breach of an alleged warranty of workmanlike performance in the conduct by the Coast Guard of its containment and cleanup operations. The damages sought are the same as under Count IV.

Tamano cites no authority supporting the novel proposition that the Coast Guard warrants performance of its oil pollution abatement activities. Tamano does not allege the existence of any contract upon which a warranty might be impressed on the principle of Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp., *supra*, and Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Corp., *supra*. *Cf.* Nikiforow v. Rittenhouse, 319 F.Supp. 697 (E.D.Pa. 1970). Nor does Tamano point to any statute which might conceivably amount to such an undertaking.[10] Indeed, contrary to Tamano's position, the Court of Appeals in United States v. Sandra & Dennis Fishing Corp., *supra*, while holding that the Coast Guard may be liable on *Indian Towing* principles for negligence in the performance of rescue activities, emphasized that its liability is not based on warranty. 372 F.2d at 195, n. 12. *See also* Wellington Transportation Co. v. United States, *supra*, 481 F. 2d at 110–111. In analagous contexts, the notion that the government warrants performance of its sovereign activities has been rejected in those few cases where apparently it has been urged. *See* Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 276 (2d Cir. 1968) (Immigration inspection gives rise to no warranty of workmanlike service); Penn Tanker Co. v. United States, 409 F.2d 514, 518 (5th Cir. 1969) (Public Health Service treatment of seamen gives rise to no warranty); Twenty Transfer Corp. v. Tracy Towing

10. The only conceivably relevant statute is Section 11(c)(1) of the Water Quality Improvement Act, 33 U.S.C. § 1161(c)(1), which provides that upon a discharge of oil into navigable waters, the President is "au-thorized to act to remove or arrange for the removal of such oil . . .." (emphasis supplied). This language cannot possibly be read as undertaking a warranty.

Line, 1969 A.M.C. 1207, 1208 (S.D.N.Y.) (no indemnity for grounding caused by buoy being off-station). *Cf.* Kommanvittselskapet Harwi (R. Wigand) v. United States, *supra*, 305 F.Supp. at 890–891. In sum, Tamano can suggest no contractual, statutory or extra-statutory consideration which might give rise to an express or implied warranty of the Coast Guard's workmanlike performance of its containment and cleanup activities. Under *Indian Towing*, the United States may be liable for negligence in the conduct of such operations. But it cannot be liable in warranty.

The motion to dismiss Count V of Tamano's direct and third-party complaints against the United States is granted.

### Count VI

Count VI alleges that the grounding of the TAMANO was due to the *sole* negligence of the United States in permitting the Soldier Ledge buoy to be off-station. In this count in its direct action Tamano seeks recovery under Section 11(i)(1) of the Water Quality Improvement Act, 33 U.S.C. § 1161 (i)(1), for Tamano's own cleanup costs, as well as contribution and/or indemnity for all amounts for which Tamano may be found liable to the original plaintiffs. This count in the third-party complaints seeks only contribution and/or indemnity.

Section 11(i)(1) of the Water Quality Improvement Act provides, in relevant part, that where an owner or operator of a vessel from which oil is discharged undertakes to remove such oil, the owner or operator is entitled to recover the reasonable costs incurred in such removal upon establishing, *"in a suit which may be brought against the United States Government in the United States Court of Claims,* that such discharge was caused solely by . . . (C) negligence on the part of the United States Government . . . ."* (emphasis

supplied). In addition, Section 11(n) of the Act, 33 U.S.C. § 1161(n), provides that "[t]he several district courts of the United States are invested with jurisdiction for any actions, *other than actions pursuant to subsection (i)(1) of this* section, arising under this section." (emphasis supplied).

Count VI adds nothing to Count I other than an assertion that if the spill was caused by the sole negligence of the United States, Tamano's right to recover its cleanup costs can be based on Section 11(i)(1) of the Water Quality Improvement Act. But the Act itself is explicit that the Court of Claims has exclusive jurisdiction of any action brought pursuant to that section. *Cf.* Murray v. United States, 132 U.S.App.D.C. 91, 405 F.2d 1361, 1366 (D.C.Cir. 1968).[11]

The motion to dismiss Count VI of Tamano's direct and third-party complaints against the United States is granted.

### Count VII

Count VII, which appears only in the third-party complaints, seeks to hold the United States directly liable to the original plaintiffs by reason of the matters alleged in the first six counts. For the reasons previously stated, the claims asserted by Tamano in Count VII on behalf of the original plaintiffs, other than those alleging negligent buoyage, negligent containment and negligent cleanup based on *Indian Towing* principles, must fail.

The motion to dismiss so much of Count VII of Tamano's third-party complaints against the United States as asserts claims other than for negligent buoyage, negligent containment and negligent cleanup is granted. The motion to dismiss so much of said count as asserts claims for negligent buoyage, negligent containment and negligent cleanup is denied.

11. As previously stated, this litigation involves allegations of negligence on the part of several parties and many claims for damages beyond Tamano's cleanup costs, which alone might be recoverable under Section 11(i)(1). Therefore, the Court is reserving, until the issue of fault has been resolved by trial, any determination of its power to award Tamano its cleanup costs, in addition to any other damages which it may be entitled to recover on *Indian Towing* principles under Count I.